January Term, 1861.

State ex rel. Stark v. McArthur.

---

### STATE ex rel. STARK vs. McARTHUR.

The provisions of sec. 2, art. VII of the constitution, authorizing the legislature to "vest such jurisdiction as may be deemed necessary in municipal courts," even if construed as requiring such a court to be located in a city or incorporated village, yet do not create any prohibition against vesting in such court territorial jurisdiction beyond the limits of such city or village.

Accordingly where the legislature established a municipal court in the city of Milwaukee, and gave it jurisdiction territorially over the entire county, it was *held*, that the act was not unconstitutional for that reason.

On an application for a change of venue, on account of the prejudice of the judge of the municipal court, the venue was properly changed to the circuit court of that county.

MANDAMUS. The case is stated by the court.

*J. H. Howe*, Attorney General, for the state.

*Mat. H. Carpenter*, for respondent.

*By the Court*, PAINE, J. The relator sued out an alternative mandamus to compel the judge of the circuit court of Milwaukee county to proceed to the trial of an indictment which had been transferred to that court from the municipal

March 12.

January Term, 1861.

STATE ex rel. STARK v. McARTHUR.

court of Milwaukee, or show cause to the contrary. The judge made a return, setting forth the reasons why he refused, which embrace really nothing but matters of law, and the same questions might therefore properly have been raised by a motion to quash the writ. The circuit court declined to try the indictment, for the reason that it had no jurisdiction of it, and this conclusion is claimed to be correct upon two grounds; first, that the municipal court has no legal existence, the act authorizing it being in conflict with the constitution; and, second, that there is no law authorizing a change of venue from the municipal court to the circuit court of that county.

We have carefully examined both of these objections, and we think neither is valid. The constitution, art. VII, sec. 2, provides that "the legislature may vest such jurisdiction as shall be deeemed necessary in municipal courts," &c.: "*Provided*, that the jurisdiction which may be vested in municipal courts shall not exceed in their respective municipalities, that of circuit courts in their respective circuits, as prescribed in this constitution." The act organizing the Milwaukee municipal court, does not confine its jurisdiction to the city of Milwaukee, but extends it over the entire county. And the objection to its legality is based upon a restriction which it is claimed that the foregoing language of the constitution imposes on the power of the legislature, requiring the jurisdiction of a municipal court to be confined territorially to the city or incorporated village in which it may be located. It was conceded, and could not well be denied, that both counties and towns are, in a general sense, municipalities. But it was claimed that the word "municipal" was used in the above clause in a stricter sense, and includes only cities and incorporated villages. This construction certainly finds some support in the remarks of this court in *Norton vs. Peck*, 3 Wis., 722; though the precise question as to the power of the legislature in establishing municipal courts was not presented by that case. But without determining whether or not it would be possible for the legislature to establish a municipal court, without locating it in a city or incorporated village, we are all of the opinion that if such court be so lo-

cated, there is nothing in the language of the constitution prohibiting the legislature from vesting in such court jurisdiction over territory adjacent to the city or village where it may be. The clause itself does not profess to prescribe any territorial limits to the jurisdiction of such courts. The only ground for implying any prohibition is the use of the words "municipal" and municipality." But conceding that the framers of the constitution contemplated the fact that municipal courts were to be located in cities, the use of these words is explained by the intention merely to describe the kind of court which they wished to authorize. And there is nothing in them which satisfies us that it was the intention to prohibit the legislature from vesting in them any territorial jurisdiction beyond the limits of the cities where they might be. On the contrary, the clause expressly says that the legislature " may vest in municipal courts such jurisdiction as shall be deemed necessary," provided it should not exceed that of the circuit courts, &c. The instrument does not assume to define "municipal courts," but uses the words as having an established meaning. It must be presumed, therefore, that they had reference to such municipal courts as had been established by the laws of other states, and that they certainly did not intend to impose any greater restriction by the use of those words, than their established meaning, thus ascertained, would require. But when reference is had to the laws of other states and countries upon the subject, it is found, as was shown upon the argument, that although the municipal courts are usually located in cities, yet they have usually had jurisdiction over the adjacent territory. This was so in Chicago, Boston, London, and probably in other instances. Therefore we think that those words in the constitution require, at most, nothing more than that municipal courts should be located in cities or incorporated villages, and that it was never intended to prevent the legislature from giving them such powers as they have usually had in other states. This conclusion is strengthened by what seems to us the entire absence of any motive for such a prohibition. It is a matter that might well be left to the discretion of the legislature. The constitution leaves to that

discretion even the original jurisdiction which it vests in the circuit courts. So also the whole matter of chartering cities and villages and organizing towns and counties, is subject to the control of the legislature. The constitution evidently contemplates that the municipal courts, authorized by it, may, within the limits over which their jurisdiction extends, have a jurisdiction equal to that vested by the instrument itself in the circuit courts. The object undoubtedly was to enable the legislature to transfer to the municipal courts some portion of the labor which would otherwise be imposed on the circuit courts. And yet where, as in this case, a large city is located in a small county, it would be much more convenient to have the great mass of the criminal business for the county transacted by one court, than to require two to keep in constant operation the whole machinery of the criminal law. If there was anything in the constitution which satisfied us that it was the intention to establish the prohibition claimed, we should give it that effect without regard to consequences. But we think that to give that effect to the language used, would be to imply a prohibition from words never intended as such, but which were used as descriptive merely of the kind of court authorized to be established. The question was somewhat discussed whether, in case this court should be held illegal as a "municipal" court, it might be sustained as an "inferior court" of the kind authorized by the same section. It was objected to it, in that view, that the law did not provide for an appeal to the circuit court, it being claimed by counsel that, under the clause giving the circuit courts "appellate jurisdiction over all inferior tribunals," such an appeal is indispensable to the valid creation of such an inferior court. Without determining whether such an objection would be well founded, we understood counsel to admit that it was not applicable to a municipal court. And it seemed very clear that it would not be. For the constitution itself provides that the jurisdiction of the latter may equal that of the circuit courts. Yet this would be impossible if the circuit court must inevitably have an appellate jurisdiction over them.

The only other question is whether the *municipal court*,

on application to change the venue on account of the preju-
dice of the judge, has authority to send the case to the cir-
cuit court of that county, or is bound to send it to another
county. It seems to be conceded by the relator that there
was no law expressly authorizing it to be sent to the circuit
court of that county. Yet he contended that when a change
of venue was applied for solely on account of the prejudice
of the judge of the municipal court, that there was no rea-
son for sending it to another county, and that the reason
failing the law would fail also. We have great doubt
whether the change which was made could be sustained up-
on this ground. For reliance upon this maxim implies that
the law, by its terms, would require a. change to another
county, and that there is no law authorizing the change to
the circuit court of that county. But if that is so the max-
im does not seem to be sufficient. For if it be conceded
that because the reason for a change of venue does not re-
quire the case to be sent to another county, therefore the
law authorizing it to be sent to another county fails, still a
further result must be obtained, and that is a provision that
it may be sent to another court in the same county. We do
not see how this can be arrived at without adopting the con-
verse maxim, that wherever there is reason for a law, the
law shall *not* fail, and we are not aware that any such exists.
We think in that case it would be for the legislature and not
the courts, to make the necessary change.

But we have come to the conclusion that the law as it now
is authorizes the change to the Milwaukee circuit court. It
is conceded that the general provisions concerning the change
of civil actions, found in chapter 123, sec. 6, R. S., 1858,
contemplates a change to another county. So also did the
provisions of chapter 95, R. S., 1849. And if these were
the only provisions upon the subject, we should hold that the
municipal court was bound to send the case to another coun-
ty. For sec. 2, chap. 178, R. S., 1858, provides that a de-
fendant in a criminal case may apply for a change of venue
on account of the prejudice of the judge, "in the manner
provided by law for a change of venue in civil actions," and
the judge shall "award *such* change of venue," &c. If the

only change provided for in civil actions was to another county, we think this would require a like change in criminal cases. But in sec. 60, chapter 117, R. S., 1858, we find the following provision: "In all cases where a change of venue is allowed for the reasons of interest or prejudice on the part of the county judge, the cause shall not be remitted to another county, but shall be removed to the circuit court." This is unquestionably a part of the general law of the state concerning the change of venue in civil actions. The legislature has itself acted upon the maxim referred to, and, the reason failing, has provided not only that the law requiring a change to another county should fail, but also supplied all deficiencies by providing that the case may be sent to another court in the same county. This incorporates into the law concerning change of venue in civil actions, the principle that where the grounds for such change do not require another county, the change may be to another court in the same county having lawful authority to try the case. When therefore the criminal law expressly provides that a change on account of the prejudice of the judge, may be applied for and shall be made in the manner provided by law in civil actions, we see no reason or right to exclude this part of that law, and look only to that which relates to a change from the circuit courts. On the contrary, the whole law upon this subject should be looked at, and when this is done, we think it not only authorizes but requires the change from the municipal court on account of prejudice of the judge, to be made as it was in this case, to the circuit court of that county. And the prisoner might still insist upon this so as to preserve his constitutional right to a trial in the county where the offense was committed.

It follows that the circuit court should proceed to try the indictment, and that the peremptory writ must be awarded.