[Dunn v. Court of County Revenues of Wilcox.]

# Dunn *v.* Court of County Revenues of Wilcox.

*Petition for Certiorari and Supersedeas to County Commissioners.*

1. *Counties as corporations.*—A county is a corporation, with capacity to sue and be sued, and is invested with certain governmental or *quasi*-legislative powers for local purposes; but it is not a municipal corporation, within the meaning of the constitutional provision (Art. iv, § 50) which declares, "The General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the State."

2. *Stock laws in Wilcox county; constitutionality of.*—The several special statutes authorizing the Court of County Revenues of Wilcox county "to establish or abolish districts in which stock may be prevented from running at large" (Sess. Acts 1880–81, p. 163; 1884–5, pp. 531, 560; 1886–7, pp. 851, 923), are complete in themselves as legislative enactments, and are not violative of said constitutional provision (Art. iv, § 50), in authorizing said county board or court to fix and declare the particular districts or localities in which said laws shall be operative.

APPEAL from the Circuit Court of Wilcox.

Heard before the Hon. JOHN MOORE.

In the matter of the petition of Robert E. Dunn and F. M. Fletcher, addressed to the presiding judge of the fourth judicial circuit, for the writs of *certiorari* and *supersedeas*, addressed to the "Court of County Revenues of Wilcox county," for the purpose of reviewing and quashing certain proceedings of said court declaring and establishing "Camden Beat" in said county as a stock district, within which stock shall not be permitted to run at large. On the hearing of the petition, the presiding judge refused to grant the writs as prayed; and his order (or judgment) refusing the writs is here assigned as error.

BRUTUS HOWARD, for appellants.—As a matter of public policy in this State, shown by the general statutes relating to fences, inclosures, and trespasses by animals running at large (Code, 1886, §§ 1364–75), cattle are permitted to run at large, and lands must be inclosed against them; and any local law to the contrary is violative of this general policy and statutory system. By express constitutional provision,

[Dunn v. Court of County Revenues of Wilcox.]

"The General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this State."—Art. IV, § 50. A county is a corporation, and is recognized, for many purposes, as a municipal corporation.—Const. 1875, Art. IV, § 52; Art. XI, §§ 7, 9; *Ex parte Railroad Co.*, 45 Ala. 732; *Schultez v. Eberly*, 82 Ala. 242. The several statutes authorizing the establishment or abolition of stock districts in Wilcox county, by the local board, are violative of the general statutes and public policy of the State, and are therefore unconstitutional. As a general rule, any municipal ordinance is void, if contrary to the general statutes of the State, unless expressly authorized by charter.—*Dunham v. Trustees*, 5 Cowen, 462; *Hayden v. Noyes*, 5 Conn. 391; 2 Halst. N. J. 64. Municipal legislation is necessarily local, and the grant of police powers, within the limits of incorporated cities or towns, is a legitimate exercise of the law-making power. But these stock laws, to be put in force over an entire county at the discretion of a local board, can not be justified under the police power. If the limits of the several stock districts should be extended, as they may be, to the boundaries of the several counties adjoining Wilcox, in which the general law prevails, what law is to determine the rights and liabilities of parties—the general or the special law? The constitutional provision was aimed against these inconsistent local laws, and its wisdom is self-evident.

J. N. MILLER, *contra*, cited *Askew v. Hale County*, 54 Ala. 639; 56 Ala. 64; 60 Ala. 271; 55 Ala. 534, 605; *Stanfill v. Dallas County*, 80 Ala. 287; Horr & Bemis, § 212; 67 Geo. 753; Dill. Mun. Corporations, vol. 1, §§ 21, 26, 961–63.

SOMERVILLE, J.—The only error assigned in the present case is the refusal of the judge of the fourth judicial circuit to issue the writ of *certiorari* to the Court of County Revenues, as prayed for by the appellants in their petition to said judge.—Code, 1886, § 3616.

The purpose of the suit is to assail the constitutionality of the several acts of the General Assembly authorizing the Court of County Revenues of Wilcox county "to establish or abolish districts in which stock may be prevented from running at large."—Acts 1880–81, p. 163; Acts 1884–85, pp. 531, and 560; Acts 1886–87, pp. 851, 923.

It is contended that these enactments are in violation of

10

section 50 of Article IV of our present constitution, which declares, "The General Assembly shall not have power to authorize any *municipal* corporation to *pass any laws* inconsistent with the general laws of the State."

That these various statutes are inconsistent with the general laws of the State may be conceded.—Code, 1886, §§ 1364–1375. To sustain the appellants' contention, it is necessary, therefore, to establish two distinct propositions: (1) That a county is a municipal corporation, within the meaning of this section of the constitution; and (2) that the General Assembly has delegated to the governing officers of Wilcox county the authority to pass stock laws within their discretion; or, in other words, that the State legislature has delegated to such county officials authority strictly legislative in its nature.

That the phrase "municipal corporation" is used in two distinct senses in our State constitution, as it often is in common parlance, seems quite obvious. In its more general sense it may be made to include both towns and counties, and other public corporations created by government for political purposes. In its more common and limited signification, however, it embraces only incorporated villages, towns and cities. An example of the former meaning is found in section 52 of Article IV of the constitution, which prohibits the General Assembly from taxing the property of "the State, counties, or other municipal corporations"; and in section 9, of Article XI, which declares that the General Assembly shall not have power to require "the counties, or other municipal corporations," to pay any charges which are now payable out of the State treasury. So, an example of the latter meaning is illustrated in section 7 of Article XI, which provides that "no city, town, or other municipal corporation," shall levy by way of taxation more than one half of one per-centum of the value of taxable property; and again in section 7 of Article XIV, regulating the exercise of the right of eminent domain by "municipal and other corporations." This distinction between municipal corporations proper, such as towns and cities voluntarily organized under general incorporating acts or legislative charters, and what have been termed "involuntary *quasi*-corporations," such as counties, sometimes generically termed municipal, as pertaining to the civil and political administration of matters of State, is well defined and fully recognized in our jurisprudence.—2 Dillon on Munic. Corp. (3d Ed.), §§ 22–23;

[Dunn v. Court of County Revenues of Wilcox.]

*State v. McArthur*, 13 Wis. 383; 2 Bouv. Law Dict., *title*, "Municipal Corporation."

The section of the constitution under consideration declares, as we have seen, that "the General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of the State." Const. 1875, Art. IV, § 50.　The phrase *municipal corporation*, as here used, in our opinion, was intended to have reference to municipal corporations in their more limited and proper sense, or to incorporated villages, towns and cities. It must be interpreted in reference to the mischief intended to be remedied, which was, very clearly, legislation by towns and cities in the form of by-laws and ordinances enacted under special charters, and not to the *quasi*-legislative functions commonly conferred on courts of county commissioners, and boards of revenue of counties, which are rarely conferred except by laws of a general character.　While the general rule obtains, that the power to make laws is vested in the General Assembly by the constitution, and this power can not ordinarily be delegated to any other tribunal; yet it is nowhere denied, that it is competent for the General Assembly to delegate to municipal corporations the power to enact by-laws and ordinances, which, in many particulars, may have all the force and validity of a statute enacted by the General Assembly itself.　This is commonly done in the charters granted to incorporated towns and cities, and the authority thus conferred comprehends a vast number of subjects affecting the property rights and personal liberty of the citizen, and covering the same class of acts regulated by State laws.　The American theory of municipalities is, that the legislation permitted to be exercised by them is a mere delegation of the power of the State; and hence it is an established rule, that all laws or ordinances enacted by virtue of this delegated power are, in a certain sense, as much part of the general system of legislation as are the laws of the State; and "it is therefore necessary that they should be consistent with the State laws."—Municipal Police Regulations (Horr & Bemis), § 88.　It is accordingly a familiar rule on this subject, that municipal by-laws and ordinances, in conflict with the general law, will be adjudged void, unless they be clearly authorized by the charter of the particular town or city enacting them.—Sedgwick on Stat. & Const. Law (2d Ed., Pomeroy), 400; 1 Dillon Munic. Corp. (3d Ed.), § 329.　The section of the constitution under con-

sideration merely reiterates the common-law rule, and makes it of binding force on the legislature, so that they shall have no constitutional power to suspend its operation. It was not intended to prohibit the delegation to counties of the *quasi*-legislative powers commonly exercised by them, as governmental or auxiliary agencies of the State, and for local purposes.—*Askew v. Hale County*, 54 Ala. 639; *Stanfill v. Court of County Revenues of Dallas Co.*, 80 Ala. 287. This would defeat, rather than promote that peculiarly American feature of republican government, which is one of decentralization, "the primary and vital idea of which is that local affairs shall be managed by local authorities."—Cooley on Const. Law (5th Ed.), *189.

2.   We are further of opinion, that the stock laws here assailed do not delegate legislative power to the board of revenues, in the sense of authorizing them to "pass laws," as prohibited by this section of the constitution.—*Clark v. Port of Mobile*, 67 Ala. 217. These laws are complete within themselves, providing, as they do, in detail, for regulating the running of stock at large, and the enforcement of the rights of all parties to be affected by them in the particular locality to which they are made applicable. None of their terms or provisions are made to rest in the legislative discretion of the county authorities. As to this feature, the General Assembly has not abdicated any of that constitutional and prerogative power, which is peculiarly its own. The only power conferred or delegated is to determine the contingency on which the laws, or certain designated portions of them, may go into effect. It is no objection to a statute, that it is conditional, or that its taking effect is to depend upon some specified subsequent event. "Affirmative legislation may, in some cases, be adopted, of which the parties interested are at liberty to avail themselves or not at their option."—Cooley on Const. Lim. *117. There is much controversy and conflict of decision as to how far this principle can be carried. However this may be, it is generally conceded, that it is perfectly competent for the legislature to provide that the people of a particular locality may be invested with the authority to accept or reject for themselves a particular *police regulation*. This involves a question of local government; and the law being complete and valid in itself, no reason seems to exist why its going into effect may not be made to depend upon the option of the citizens in that locality, or district, to be expressed in any constitutional

[Crumpler v. Deens.]

mode provided for by the terms of the law itself, or upon any other specified reasonable contingency.—Cooley on Const. Lim. *123; 1 Dillon on Munic. Corp., § 44. That the regulation of estrays, or animals running at large, including provisions for impounding them, is a proper subject for police regulation, has often been decided, and is now beyond all debate.—Tiedeman on Police Power, § 141; *State v. Court of Common Pleas*, 13 Amer. Rep. 422; *note*, p. 428; Munic. Police Ord. (Horr & Bemis), §§ 212, 249; 1 Dillon Munic. Corp. (3d Ed.), § 402; *Cartersville v. Lanham*, 67 Ga. 753. This being true, no doubt can exist as to the power of the legislature to confer on the governing body of a county the authority to accept or reject the terms of a stock law of the kind under discussion, and to fix the area of the district, in the mode pointed out by the law, in which it may be established at one time, or abolished at another. The authority conferred is but *quasi*-legislative, and, in our judgment, violates no provision of our State constitution. *Stanfill v. Court of County Rev. Dallas Co.*, 80 Ala. 287; *People v. City of Butte*, 47 Amer. Rep. 346.

Under these views, the error assigned must be overruled, and the judgment of the Circuit Court refusing the writ of *certiorari* will be affirmed.