# Clark & Murrell *v.* The Port of Mobile.

*Action for Penalty for Violation of Municipal Ordinance.*

1.  *Taxation; statute fixing basis of on statute of another State, unconstitutional.* — The statute which provides, that if any other State requires of an insurance company created, or organized by the laws of Alabama, any deposit of security or payment of taxes, fines, penalties, certificates of authority, or license fees, greater than the amount required for a similar purpose from similar companies of other States by the then existing laws of Alabama, then all the companies of such States establishing, or having heretofore established agencies in this State, are required to make the same deposit, for a like purpose, with the Treasurer of this State, and pay to the State Treasury for taxes, fines, penalties, and license fees, an amount equal to the amount of such charges and payments, imposed by the law of such State upon the companies of this State, and the agents thereof, is violative of the constitutional provision, which requires uniformity of taxation, upon the property of individuals and corporations (Art. XI § 6), and is an unwarranted delegation of the legislative power of this State to other States.

1.  *Payment of license under, no protection.* — Hence the payment by a Mississippi insurance company doing business here of $1,000 for a State license, which, by the law of Mississippi, is declared to be in full of taxes and licenses, State, county, and municipal, being unauthorized, does not relieve it from the payment of a municipal tax or license.

APPEAL from the City Court of Mobile.
Tried before HON. O. J. SEMMES.
The facts are sufficiently stated in the opinion.

OVERALL & BESTOR, for appellant.

BRAXTON BRAGG, for appellee.

[Clark & Murrell v. Port of Mobile.]

SOMERVILLE, J.—This is a suit for a penalty of ten dollars, imposed on appellants by the Recorder's Court of the Port of Mobile, for alleged violation of a municipal ordinance of that city, requiring a license for the exercise of the privilege of carrying on the insurance business. The appellants were agents of the Columbus Fire Insurance Company, an insurance corporation chartered under the laws of the State of Mississippi. The laws of that State require foreign insurance companies to pay a license tax of $1,000 to the State, to be received in lieu of all other taxes or licenses, which are prohibited to be exacted by any county, or municipal authority.—Code of Miss. (1880) §§ 585, 587.

Section 1432 of the Code of Alabama (1876) requires all insurance companies, not incorporated under the laws of Alabama, to pay a license of $100, for the privilege of transacting any business of insurance in this State.

But it is further provided by section 1440, as follows : " Whenever *the existing* or future *laws of any State of the United States* shall require of insurance companies, incorporated by or organized under the laws of this State, or of the agents thereof, any deposit of securities in such State for the protection of policy holders or otherwise, or any payment of taxes, fines, penalties, certificates of authority, license fees, or otherwise, greater than the amount required for similar purposes from similar companies of other States, by the then existing laws of this State, then, in every such case, all companies of such States, establishing or having heretofore established any agency or agencies in this State, *are required to make the same deposit* for a like purpose with the treasurer of this State, for taxes, fines, penalties, license fees, or otherwise, *an amount equal to the amount of such charges and payment imposed by the laws of such State* upon the companies of this State, and the agents thereof."

The appellants, in accordance with the requirements of this section, paid the sum of $1,000 to the State Treasurer and obtained a license to carry on the insurance business in the State for one year from May 13, 1880. They claim that, under the terms of the above statute, they are relieved from paying any license to the municipal authorities of Mobile.

We do not think appellants can derive any protection from this statute, as, in our opinion, it is clearly incompatible with several provisions of the constitution of the State, which the courts are compelled to regard as " the paramount law and the highest evidence of the will of the people."—Potter's Dwarris on Stat. and Const. 66-67. It is, in the first place, violative of those clauses having reference to that uniformity of taxation required in assessing the property of private cor-

porations and individuals. Section 6 of Art. XI reads as follows : " The property of private corporations, associations and individuals of this State, shall forever be taxed at the same rate ; *Provided*, This section shall not apply to institutions or enterprises devoted exclusively to religious, educational or charitable purposes."—Const. (1875) Code, p. 145

Section 1 provides that "'all taxes levied on property in this State, shall be assessed in exact proportion to the value of such property ; *Provided*, *however*, The General Assembly may levy a poll tax not to exceed one dollar and fifty cents on each poll, which shall be applied exclusively in aid of the public school fund, in the county so paying the same."—*Ibid*.

Provisions, almost identical in phraseology with these, were found in the Constitution of 1866, and have been construed by this court in the case of *The Mayor of Mobile v. Stonewall Ins. Co.* 53 Ala. 570. It was there held that the purpose of the Constitution was to prevent invidious exemptions or discriminations by which the property of an individual, or of a corporation, is relieved from bearing a just proportion of the common burden of taxation, demanded by that equality of right which is a fundamental principle of our institutions. BRICKELL, C. J., speaking for the whole court, says : " Reading these constitutional provisions in the light of their history, and with a due regard to the words in which they are expressed, it is impossible for us to doubt that it was not competent for the General Assembly, in the imposition of taxes, to distinguish or discriminate in favor of corporate property subject to taxation. If property of a particular kind is subjected to taxation, and owned by a corporation, it must bear the rate of taxation imposed on individuals. While the Constitution inhibits the exemption or discrimination in form of corporations, it equally inhibits a discrimination against them. Equality in bearing a common burthen, which is natural, right and equity, is secured alike. to the corporation and to the citizens." See *Mayor, &c. v. Dargan*, 45 Ala. 318 ; *City of Davenport v. R. R. Co.* 38 Iowa, 633.

If the legislature possesses the power to pass a law of this character, there is nothing to prevent them from requiring a mere nominal license from any insurance company, or other private corporation, and on receipt of this sum to exonerate such corporation from taxation on millions of property. Such discrimination would manifestly *not* be taxing the property of all private corporations and that of individuals at the same rate, as required by § 6 ; nor would it be assessing all taxes levied on property in Alabama " in exact pro-

portion to the value of such property," as exacted by § 1 of Art. XI of the Constitution.

We do not mean to intimate, by these views, that the legislature has no constitutional power to select, in its discretion, the subjects of State and municipal taxation. "The constitutional requirement of equality and uniformity only extends to such objects of taxation as the legislature shall determine to be properly subject to the burden. The power to determine the persons and the objects to be taxed is trusted exclusively to the legislative department; but over all those objects the burden must be spread, or it will be unequal and unlawful as to such as are selected to make the payment." Cooley's Const. Lim. 515.

The section of the Code under consideration (§ 1440) is void, furthermore, for another reason. It is in effect, a delegation of legislative power. The framers of the Constitution have vested the law making power of this State exclusive in the General Assembly.—Const. (1875) Art. IV, § 1. No principle is better, and perhaps more wisely settled, as a maxim of Constitutional law, than that " the power conferred upon the legislature to make laws cannot be delegated to any other body, or authority."—Cooley's Const. Lim. 116–117. The people have reposed the power there, and it cannot be transferred to any other person, State, or nationality. This section of the Code authorizes, in effect, the legislature of Mississippi, speaking through its statutes, which are the subjects of extrinsic proof and not of judicial knowledge in our courts, to fix by law the amount which the Treasurer of Alabama shall demand of appellants as a license tax to do an insurance business in this State. If the law making power of that State should, in a day, modify, amend or repeal their revenue laws, *ipso facto*, such legislative action would modify, amend or repeal the legal operation of our laws, provided the principle contended for by appellant's counsel is a sound and prevailing one. This cannot be, for it would be confiding to a foreign jurisdiction that legislative discretion which the General Assembly of Alabama are constitutionally bound to exercise themselves, and which they cannot delegate or commit to another. They are not permitted to " substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust."—Cooley's Const. Lim. 117 ; *Thorne v. Cramer*, 15 Barb. 112; *State v. Ware*, 33 Iowa, 134, (*S. C.* 11 Amer. Rep. 113); *Barto v. Himrod*, 8 N. Y. 483. If a law should be passed entitled " an act to authorize the legislature of Mississippi to fix the amount of the license tax to be required of insurance companies, organized under the laws

[Potts v. Coleman.]

of that State and doing business in Alabama," the objection would be obvious on first impression. Yet this is the necessary and practical effect of the statute as it now stands, subject to the sole limitation that the license could not be less than the sum of one hundred dollars, as required of foreign insurance companies generally by § 1432 of the Code.

This statute, under which the license of appellants was issued, being void for the reasons mentioned, it furnishes no exoneration from liability to pay such additional license as any municipal authority may be authorized by law to require of all insurance agents or companies. The City Court did not err in sustaining the action of the Recorder, and the judgment is affirmed.