STATE EX REL. OWEN, Attorney General, vs. DONALD, Secretary of State.

*May 8—June 8, 1915.*

*Taxation: Mineral rights: Constitutional law: Equal protection of the laws: Classification.*

Sec. 1042*j*, Stats. (ch. 367, Laws 1913), relating to the taxation of mineral rights and providing, among other things, that they shall be sold for nonpayment of taxes only to the owner of the fee or to the state, is unconstitutional in that it violates the guaranties of equal protection of the laws contained in the state and federal constitutions. The classification of real property thereby attempted cannot be justified. WINSLOW, C. J., and SIEBECKER and KERWIN, JJ., dissent.

MANDAMUS action commenced in this court to compel the secretary of state to audit orders of the commissioners of public lands for payment to Ashland county of $253.04 for tax claims on mineral rights acquired, in form, by the state under ch. 367, Laws 1913.

The petition stated all the facts necessary to a cause of action for the relief prayed for, if the act of 1913 aforesaid be constitutional. Issue was duly joined in respect thereto and the cause submitted for decision on the 8th day of May, 1915.

The legislative enactment claimed by defendant to be unconstitutional is embodied in sec. 1042*j* and sub. 1, sec. 172—37, Stats., as follows:

"Section 1042*j*. 1. Any and all rights and reservations to enter upon and take away any mineral from any lands within the state of Wisconsin, granted by or reserved in any deed or conveyance of such lands, the title to which right or reservation is vested or may hereafter become vested in any person or corporation other than the owner of the fee to which such right or reservation is attached, is hereby declared to be taxable; and the same shall be separately assessed for taxation, and like proceedings shall be had thereon relating to the levy, collection, and sale thereof for the nonpayment of taxes against said reservation, as are in force from time to time for

the levy and collection of taxes on real estate and the sale of the same for the nonpayment thereof. Provided, that such reservations and rights reserved prior to the passage and publication of this act shall be sold for nonpayment of taxes only to the owner of the fee to which such right or reservation is attached, or to the state as hereinafter provided; and provided further, that such reservations and rights reserved after the passage and publication of this act and sold for taxes shall be sold only to such owner or to the state. Whenever any such reservations or rights are sold to the state for unpaid taxes, the owner of the fee shall have the right at any time within three years to purchase from the state the tax certificates held by it upon such reservations or rights by paying the total amount paid by the state plus ten per cent. interest per annum on such amount. The county treasurer of each county shall furnish the commissioners of public lands a list of all such rights to be sold to the state, together with a description of each parcel and the taxes and charges thereon, and the amount of such taxes and charges shall be paid to the county treasurer of such county from any moneys appropriated from the general fund of the state to carry out the provisions of this section on the order of the commissioners of public lands after being audited by the secretary of state.

"2. No such right to reservation so acquired by the state shall be completely alienated or sold but may be leased for limited periods of time on a royalty basis; but such lease shall provide for a just and reasonable remuneration to said owner of the fee for any damage to the surface, resulting from the exercise of the right so acquired by the state to enter upon and take away any mineral from the land; and all such payments shall be made from the appropriation made for carrying out the provisions of this section.

"3. The assessing officer of the several assessment districts may require the owner of any such title to or reservation of the right to enter upon and take away mineral from any lands in the state to make return under oath to him of the value of such right, and in case the owner of such right shall refuse or neglect to make such return to the assessor of the district where said lands are situated the assessor of such district may assess and value the rights reserved at what in his opinion and judgment shall be its fair market value, and in such

190    SUPREME COURT OF WISCONSIN.    [June

State ex rel. Owen v. Donald, 161 Wis. 188.

case the owner of such reserved right shall not be heard to complain because of the value placed thereon by the assessing officer; however, in case such reserved interest is valued by the owner, the assessing officer shall not be bound by the value fixed thereon by such owner, but may, notwithstanding, assess such interest at such sum as shall, in his best judgment, be the true value of the same.

"4. Nothing in this act, however, shall extend to mining leases, made as such in good faith, which are terminable upon failure to fulfil the terms and conditions of such leases."

"Section 172—37.    1. There is annually appropriated on July first, such sums as may be necessary payable from any moneys in the general fund, not otherwise appropriated, for the commissioners of the public lands to carry into effect the provisions of section 1042*j.*"

The *Attorney General,* for the plaintiff.

*F. R. Bentley,* special counsel, for the defendant.

MARSHALL, J.    Does the quoted legislative enactment violate the guaranties of equal protection of the laws contained in the state and federal constitutions, by putting the particular species of real estate in a class by itself and treating the same for public revenue purposes and the owners thereof materially different than other forms of real estate and the owners thereof are treated?

Though the constitutionality of the act in question was challenged by defendant upon several grounds, only those covered by the stated question were considered in deciding the case.    It is the opinion of the court, the Chief Justice and Justices SIEBECKER and KERWIN dissenting, that the classification made by such act cannot be justified under even the very liberal rules on that subject, and hence the question must be answered in the affirmative, requiring the defendant's motion to quash the writ of *mandamus* upon the ground that such act is unconstitutional to be granted.

*By the Court.*—It is so ordered, and the proceedings dismissed.

WINSLOW, J. C. (*dissenting*).   My opinion is that a mining right is a 'property right of such a markedly different character from that of other forms of property that it may properly be the subject of classification, provided the uniformity rule of taxation be not violated.   The peculiar character of the property right in question is fully set forth in *Gadow v. Hunholz,* 160 Wis. 293, 151 N. W. 810.

SIEBECKER and KERWIN, JJ., concur in the foregoing dissent.

The following opinion was filed June 23, 1915:

TIMLIN, J. (*concurring*).   Upon an equal division of the members of the court I was called upon to cast the deciding vote in this case.   I think the interests of the bench and bar and of the public require some more explicit statement of the reasons upon which my conclusion rests.

1. I first inquire, What is the nature and purpose of the statute under consideration, sec. 1042*j,* Stats. 1913 ?

The statute does not expressly include rights in and to ores or minerals excepted from a grant of land.   Where a grant of this kind is drafted by a competent person and it is desired to separate the ownership of the ores and minerals from the ownership of the land for other purposes, this is accomplished by an exception from the grant of the ores and minerals together with a reservation of the right to enter upon the land, explore and mine for such ores.   There are two reasons why this statute should be taken to include exceptions and express grants as well as reservations, although the former is not within the express words of the statute: (a) because there is a decision of this court relative to construction of deeds which holds that, when it is apparent from the subject matter and from other provisions in the deed that such was the intention of the parties, an exception may be created by language like that used in this statute.   (b) In order to

uphold if possible the constitutionality of the statute, it ought to be held that this statute covers all property rights or title in and to minerals and mining rights held or owned by others than the owner of the surface rights in the land. For surely upon a test of uniformity or of equal protection of the laws this statute could better meet that test if it includes estates or rights in ores and minerals created by exception or express grant than if it me ely applied to rights to enter, mine, etc., created by reservation. The reasons for this are obvious.

The statute carries with it on its face some indications of a purpose to accomplish, under the guise of a taxing law, the result of extinguishing all right or title in ores or minerals in or under land outstanding in a third person separate from the surface rights and to bestow such rights upon the person who may for the time being own the surface rights to the land. But a statute with this interpretation would not meet the constitutional tests above mentioned as strongly as a statute for the purpose of raising revenue by taxation. (a) For centuries it has been common law that there may be different estates and interests in the same piece of land,—tenancy in common, life estates, estates for years, remainder, reversions, easements, limited fees, rights of piscary or turbary, title to standing and growing timber, rights to quarry, or rights to minerals in or under the surface. This precludes any theory that such multiplication of estates in a single tract of land is detrimental to public welfare so as to call for any exercise of the police power. On the contrary it has been generally agreed by lawyers, statesmen, and publicists that any policy which increases the number of proprietors in the commonwealth is beneficial rather than injurious in its tendency. (b) Underhand or improper purposes are not to be attributed to the legislature.

First conclusion. So that in deference to the rule of constitutional law which requires us to hold every statute constitutional unless we are satisfied beyond a reasonable doubt to

the contrary, we must treat this statute as a taxing statute enacted for the purpose of raising revenue for governmental purposes and as including within its scope all cases in which by exception, reservation, or express grant the title to ores and minerals in land, together with the right of exploring for and mining the same, are vested in some person or persons other than the person or persons who own title to the land and its beneficial use for any and all other purposes.

2. I do not rest this case solely on the question of the validity of the statute under sec. 1, art. VIII, Const. of Wis. I also consider its validity under the Fourteenth amendment to the paramount federal constitution, (a) because it has been customary in this court to consider these constitutional requirements together. *Black v. State,* 113 Wis. 205, 89 N. W. 522; *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468; *Lawrence University v. Outagamie Co.* 150 Wis. 244, 136 N. W. 619, and cases cited.     (b) Because if it conflicts with the paramount constitution it must fall notwithstanding it might be thought capable of enforcement under our state constitution.     (c) It might be well to rest it wholly on the federal constitution.     I would have been willing to so rest it and say nothing about the state constitution, out of deference to the minority opinion and to facilitate the review of the decision in the supreme court of the United States by those hereafter claiming title under this statute.

3. The arbitrary imposition of unequal burdens upon persons between whom no substantial distinction germane to the purposes and objects of the law can be made is forbidden by the state and federal constitutions in matters of taxation as well as in other matters.     This distinction or difference necessary to uphold the classification must be one which has some relation to the legal capacity of the person, as infancy, coverture, lunacy, idiocy, alienage, etc., or to the nature and qualities of the property discriminated against, as, for example, dangerous or nondangerous property, or to the proper

objects sought to be achieved by the legislature. For instance: inequality of burden based upon stature, complexion, political belief, or upon insignificant or immaterial distinctions in the nature and qualities of property, or upon differences having in them nothing germane to the proper object sought to be attained by the statute, would not be permissible inequality. The statute in question affords a good illustration. The value of the use and occupation, and from this and other data the market value of land, is ascertainable. The existence or value of ores or minerals beneath the surface undisclosed is not easily ascertainable, but might be known to the owner if he has drilled and tested the land. This is a distinction cognate to the purposes of the statute which would support the discrimination found in the statute requiring such owner to furnish the assessor an affidavit of value while the owners of other estates in the same tract of land are not required to do so. If this were all of the statute, the statute would be valid under either the federal or state constitution.

By other statutes all sales of real or personal property of a delinquent taxpayer are subject to competitive bidding at public auction. In the case of the sale of personal property the buyers bid up upon the price, while in the case of land they bid down upon the quantity. The bidding is as truly competitive and as much for the benefit of the delinquent taxpayer in one case as in the other. Under the statute here in review the property mentioned is returned delinquent, advertised for public sale, bidders are invited, and the property treated in all respects, except with reference to the mode of assessment, as other real property. But when the invited bidders come they are prohibited from bidding because they cannot become purchasers. No one but the state or county or the person who owns the remaining interest in the land can bid at the sale. Now if this is a taxing statute, the purpose of which is to raise revenue for state expenses, this limi-

tation of bidders is apparently not germane to but in contravention of the purpose of the statute. It also discriminates injuriously against the holder of the kind of property described because he loses the advantage of having some one purchase his mineral rights in the north one, three, ten, or twenty acres of the tract in question, leaving him the remainder. This discrimination is wholly arbitrary; there is no legitimate classification on which it can rest. It surely does not aid the state in collecting its revenue to limit the number of bidders nor to require the whole land to be sold instead of the smallest area from off the north side. There is nothing in the nature of the property or in its existence detrimental to public welfare. There is no ground for any legal classification upon which this added burden can rest. It is argued that the alleged sale is really not a sale but an absolute forfeiture. This is contrary to the language and meaning of several statutes treating the affair as a sale and not as a forfeiture. But under the constitutional rules in question the legislature could not provide for a sale at public auction with competitive bidding for the property of one delinquent taxpayer and an absolute forfeiture of the property of another delinquent taxpayer, there being nothing in the nature of the property to uphold or upon which to classify this discrimination.

It having been decided by this court that the requirement that the rule of taxation be uniform is not limited to the mere rate of taxation, I think it follows that the statute in question transgresses this requirement as well as the Fourteenth amendment to the United States constitution. "The rule of taxation" does not, I think, extend to all steps in enforcing collection of the tax. But it does extend to those important steps which are essential parts of the tax proceedings. Collection by demand or collection by enforcement process are such, and it would be intolerable, for illustration, that a certain favored class should have six months in which to pay

their taxes while others must pay in six days. (b) This statute, I think, also aims to cut off at the sale the right of redemption of the owner of the kind of property discriminated against, while leaving a three years' right of redemption to all other owners of other estates in the same tract of land. True, the redemption must be made upon penalty, paying fifteen per cent. interest, but he would be a bold innovator in the law who would hold that the equity of redemption is not a matter of great consequence. Besides this, he would be much at variance with facts and would ignore the ordinary practices prevailing in real life. But just as there was no legal foundation for classification or discrimination in the clause which deprived the owners of the ores and minerals of the advantage of competitive bidding, so there is no legal foundation for this discrimination against him with reference to the time or manner of redemption. In this latter respect the act is void under both the state and federal constitutions. (c) I consider the act invalid also in that it attempts to confer upon a stranger to the title of the ores and minerals the privilege of redemption or acquisition which it denies to the delinquent owner. This is a clear case of denying the equal protection of the law. It would be the legal equivalent of enacting that one tenant in common might acquire title to the whole under a tax sale, while the other tenant in common could not.

4. With reference to the provision making the assessor's valuation conclusive, I understand that to be conclusive except in case of fraud. That is to say, I understand the rule that fraud vitiates everything obtains here. With this qualification I think that when a duty relating to assessment is lawfully imposed on a taxpayer which he is given time and opportunity to perform, but which he fails to perform, all who fail to perform that duty constitute a class against which the valuation of the assessor, while not fraudulent, may be made conclusive.

5. If the statute in question is unconstitutional in its basic and leading provisions as aforesaid, the purchaser at the sale would acquire no title as against the owner and the state should not be coerced to audit claims or pay out money on a void sale. The part of the statute sought to be enforced here by *mandamus* is not capable of severance from those portions above held void, but expressly rests thereon and is inseparably interrelated therewith.

There is another ground of unconstitutionality which I must now mention. The provision for the state advancing money to the county, which then drops out of consideration, taken with the provision that the owner of the remaining interest in the land may redeem within three years and in many cases within a longer time, amounts in practical effect to the state advancing money for this favored person, who has an option to repay the state the amount advanced with interest and take the property or to let the state keep the property. He has three years or more within which to drill and test the land, and if he finds no ore there he will leave it to the state. If he finds ore he will redeem and become the owner. But if he has not the means to carry on drilling and exploration he will naturally turn the possession of the land for the purpose of drilling and exploration over to a drilling and exploring company which will explore and acquire title to the same. If such company finds ore it will, through the owner of the surface rights, redeem; if not, the exploring company will leave the land to the state. We may question whether a statute requiring the secretary of state to audit a demand against the state created by statute, which demand amounts to an advance by the state to one owner of a part interest in land to enable him to acquire the interest of another owner in the same land, the state acquiring nothing except interest on its loan or a right to take the ores and minerals in cases where there are none, is valid. I think it is not valid. I think it is appropriating state money for the

purpose of aiding a private enterprise.   The statute by shutting out bidders prevents the state from collecting its revenues.   It then provides for the state becoming the purchaser, but this state title so acquired is redeemable at the option of the owner of another separate interest in the land.   This last mentioned person is under no obligation to redeem, owes no debt or duty to pay the tax, and can select all the valuable mineral rights and become the owner thereof and leave those that are nonexistent or worthless to the state.   As to all mineral rights redeemed, the state is merely advancing money for the benefit of one who is in the law a stranger to the interest sold for taxes.   As to all mineral rights unredeemed by this favored person, the state is endeavoring to acquire title, not to collect taxes.