48 So.2d 445

**STATE v. ALABAMA POWER CO.**

**3 Div. 569.**

Supreme Court of Alabama.

Oct. 19, 1950.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., M. Roland Nachman, Jr., and Neil Metcalf, Asst. Attys. Gen., for appellant.

Steiner, Crum & Baker, of Montgomery, and Martin, Turner & McWhorter, of Birmingham, for appellee.

STAKELY, Justice.

This is an appeal by the State of Alabama from a decree of the equity court of Montgomery County overruling its demurrer to the bill in the nature of a bill in equity filed by the Alabama Power Company. The bill seeks relief against alleged discriminatory practices in the assessment for ad valorem taxes of the properties of the complainant. The allegations of the bill may be stated in substance as follows:

The Alabama Power Company is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business at Attalla, Etowah County, Alabama. It owns property and operates a public utility in all except ten counties of the state and it owns property in one other county but does not operate a utility in that county.

As required by law the Alabama Power Company filed its return with the State Department of Revenue for the tax year of 1949. The State Department of Revenue ascertained and fixed the total value of its property in Alabama for tax purposes for such year to be $154,000,000. It then assessed the property at sixty percent of that value, thereby fixing the company's ad valorem assessment at $92,400,000. Pursuant to statutory provision the Alabama Power Company then filed its protest against the assessment with the State Department of Revenue. This protest was overruled and the State Department of Revenue then made the assessment final. From such final assessment the Alabama Power Company appealed to the Circuit Court of Montgomery County and executed an appropriate supersedeas bond.

The State Department of Revenue exercises general and complete supervision and control of the valuation, equalization and assessment of property, privilege and franchise taxes, of the collection of all taxes of every kind for the state and counties, of the enforcement of the tax laws of the state and supervision and control of all officials and boards charged with any duty in the enforcement of the tax laws, to the end that all taxable property in the State shall be assessed and taxes shall be imposed and collected thereon in compliance with the law, and that all assessments on property, privileges and franchises in the State, shall be made in exact proportion to the fair and reasonable market value thereof in substantial compliance with the law. The duties of the Department are referred to in the bill in detail.

For the tax year 1949 and for many years prior thereto the taxing authorities in Alabama have intentionally and systematically assessed the property of other taxpayers generally upon the basis of less than 40 percent of the fair and reasonable market value of their property "(except that for the tax year 1949 the Department of Revenue has assessed the property of certain railroad, public utility and other like properties upon a basis of 60 percent of their value for tax purposes)" and the

Department for the tax year 1949 assessed the property of the Alabama Power Company at 60 percent of its value for tax purposes.

The bill avers that the assessment imposed on Alabama Power Company property is illegal, excessive, void and discriminatory in that it is in violation of §§ 211, 217, 6, 13 and 35 of the Constitution of Alabama and of the due process and equal protection clauses of the 14th Amendment to the Constitution of the United States.

The bill avers that the assessment so fixed against the Alabama Power Company property was the result of a systematic and intentional discrimination against it in assessing its property at a greater and greatly disproportionate percentage of the value of its property from that intentionally and systematically assessed against the property of other private corporations, associations and individuals in the state, in violation of §§ 211, 217, 6, 13 and 35 of the Constitution of Alabama and applicable statutes and of the 14th Amendment to the Constitution of the United States.

Alabama Power Company prays that the court vacate and set aside the final assessment made by the Department against its properties and fix the assessment of its properties for the tax year 1949 as provided by Code of 1940, Title 51, § 140 and in accordance with §§ 211, 217, 6, 13 and 35 of the Constitution of Alabama and of the 14th Amendment at a figure not in excess of the percentage at which other property is generally and systematically assessed in Alabama and prays for general relief.

Although a number of propositions must be considered in this case the fundamental question is whether the State Department of Revenue has the power to assess the properties of Alabama Power Company at a ratio of 60% of their taxable value when at the same time the properties of other private corporations, associations and individuals in the state are systematically and intentionally assessed at a rate not in excess of 40% of their taxable value. The State points out in brief that there is no allegation in the bill "that appellee is assessed at a higher rate than other pub-lic utilities or that there is discrimination among assessments of public utilities." It is further pointed out that there is no allegation in the bill "that the total value of appellee's property is less than $154,000,-000 or that $92,400,000 is in excess of 60% of the value of appellee's property."

■ At the outset it is well to note that a bill in the nature of a bill in equity was filed in the Circuit Court of Montgomery County, in Equity, in accordance with procedure approved by this court. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342; Merriwether v. State, 252 Ala. 590, 42 So.2d 465. It is also well to note that on this appeal there is no issue of fact before the court but only the sufficiency vel non of the allegations of the bill. It is of course established that in this situation the court assumes as true all facts which are well pleaded in the bill of complaint.

In view of the important part which §§ 211 and 217 of the Constitution of 1901 play in this case, we set out the pertinent part of these sections.

"Section 211. All taxes levied on property in this state shall be assessed in exact proportion to the value of such property, * * *."

"Section 217. The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate; * * *."

In considering and construing the foregoing sections it will be helpful to make a chronological review of the several limitations upon the taxing power of the state as adopted in prior constitutions of the state. In this connection we quote from our decision in the case of Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 59, as follows: "A chronological review of the several limitations upon the taxing power of the state, as adopted in successive constitutions, will be found in Western Union Tel. Co. v. State Board, 80 Ala. 273, 60 Am.Rep. 99, and in Capital City Water Co. v. Board of Revenue, 117 Ala. 303, 23 So. 970. The first limitation which included personal property is found in the Constitution of 1868, art. 14 [9], §

1, providing that 'all taxes, levied on property in this state, shall be assessed in exact proportion to the value of such property.' This identical clause was adopted in the Constitution of 1875, art. 11, § 1, along with the new provision (article 11, § 4) that 'the General Assembly shall not have the power to levy, in any one year, a greater rate of taxation than three-fourths of one per centum on the value of the taxable property within this state.' In that Constitution also was incorporated the provision (section 6, art. 11) that 'the property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate.' This clause was a substantial repetition of section 4, art. 13, of the Constitution of 1868. These several limitations on the taxing power were carried into the Constitution of 1901 in totidem verbis. * * *"

The first important case construing the forerunners of §§ 211 and 217 in the present constitution is the case of Mayor of Mobile v. Stonewall Insurance Co., 1876, 53 Ala. 570. The court said:

"The constitutional provision [Const. 1868, Art. XIII, Sec. 4] * * * was intended * * * to cure defects time had developed in former constitutions—to narrow and restrain legislative power in the instances experience had shown it most liable to abuse. Under former constitutions the taxing power was not defined, qualified, or restrained by any other provision than the simple declaration: 'all lands liable to taxation in this State shall be taxed in proportion to their value.' On personal property, taxes, either specific or ad valorem, could be imposed as the legislature deemed best. Slaves, formerly the chief subject of taxable personal property, were uniformly taxed, not according to value, but a specific tax was levied, graduated by the age of the slave. On other articles of personal property, such as watches, clocks, etc., a specific, not an ad valorem tax, was imposed. The inequalities of this mode of taxation were the cause of complaint, and we find in the constitution of 1868 the provision, which has been generally introduced into the later constitutions of our sister States: 'All taxes levied on property in this State shall be assessed in exact proportion to the value of such property.' * * * No governmental power is more easily abused, or more often perverted, than the taxing power. * * * There cannot be a just interpretation—an interpretation which will consummate the intent of the people in the adoption of these and other constitutional provisions—which is not deduced, not only from their language, but from their history—from the causes to which they owe origin—the mischief they were intended to remedy. 1 Story's Const., Sec. 405 A * * *.

"* * * A state constitution is always interpreted in the light of the common law, and if it be not the first constitution, in the light of its predecessors. The guaranties for the security of property and of personal liberty, found in the bill of rights, are borrowed chiefly from magna charta, and for their interpretation we look to the common law. New provisions, having their origin in larger experience, introduced into an amended or revised constitution, are to be construed and allowed such operation as will secure the purposes for which they were introduced; and these purposes are to be ascertained from a just consideration of the causes in which they originate.

"* * * Reading these constitutional provisions in the light of their history, and with a due regard to the words in which they are expressed, it is impossible for us to doubt that it was not competent for the general assembly, in the imposition of taxes, to distinguish or discriminate in favor of corporate property subject to taxation. If property of a particular kind is subjected to taxation, and owned by a corporation, it must bear the rate of taxation imposed on individuals. While the constitution inhibits the exemption or discrimination in favor of corporations, it equally inhibits a discrimination against them. Equality in bearing a common burthen, which is natural right and equity, is secured alike to the corporation and to the citizen.

"The constitutional provision [Art. IX, Sec. 1] is broad enough in its letter to

comprehend all taxation the legislative power can impose. It is not material whether the imposition is by the legislature, through its own independent action, or by its agencies exercising power it has conferred. * * *"

After the decision in Mayor of Mobile v. Stonewall Insurance Co., supra, this court decided the case of Board for Assessment of Property of Railroad Companies v. Alabama Central R. R. Co., 59 Ala. 551. This was the first case under the Constitution of 1875, Art. XI, §§ 1 and 6. The court said:

"The constitution is plain and imperative. * * * The value of the property, considering the uses for which it is employed, and the profit which may be derived from it, may be ascertained under rules which the legislature may prescribe. The value must be ascertained and taxes assessed upon it. It is not competent for the legislature to declare that any species of property is of a particular value because of its income or to declare that the income alone shall be considered in determining its. value. * * *

"There can be no discrimination and no distinction between the property of individuals and of corporations. The constitution obliterates all such discriminations and distinctions; and while the legislature cannot, as formerly, grant to corporations immunity or exemption from taxation, it cannot subject them to any other standard or rate of taxation than that to which natural persons are subjected. * * *"

Subsequently in the case of Clark & Murrell v. The Port of Mobile, 1880, 67 Ala. 217, in referring to §§ 1 and 6 of Art. XI, this court said: " * * * the purpose of the Constitution was to prevent invidious exemptions or discriminations by which the property of an individual, or of a corporation, is relieved from bearing a just proportion of the common burden of taxation, demanded by that equality of right which is a fundamental principle of our institutions * * *."

Later in Moog v. Randolph, 1884, 77 Ala. 597, this court said it was settled

" * * * that the general purpose of these clauses [Art. XI, Secs. 1 and 6] is to establish an ad valorem system of taxation, thus exacting a certain kind of uniformity in the rules of taxation, as applied to property of all persons, whether private or artificial, * * *. Their object has been construed to be, to secure, as far as practicable, that equality in bearing the just burdens of government, which has become a distinguishing characteristic of the American States, and has been well denominated the cornerstone of Anglo-Saxon liberty. * * *

" * * * The legislature would have no power, under the device of a classification, to tax the property of all Jews or Israelites, at a rate greater than that of other citizens; nor to say that others should be exempt from paying taxes because of their peculiar religious tenets, or of the color of their hair. * * *"

Consistent with its uniform ruling that §§ 211 and 217 and the prior sections in the Constitution of 1875, Art. XI, §§ 1 and 6, require equality among corporations, associations and individuals, this court in State Bank v. Board of Revenue, 91 Ala. 217, 8 So. 852, 855, said: " * * * What we do decide is that, whenever the legislature levies a tax on property, the rate must be in exact proportion to the value of such property; and that, if a tax is imposed on any species of property, all property belonging to that species must be taxed at the same rate, whether it belongs to an individual, an association of persons, or to a private corporation. We mean by this not only that in this record natural persons, individuals, or companies stand on the same footing with private corporations, but also that each individual, association, or private corporation is, under our constitution, endowed with the same rights, and subject to the same burdens, as are enjoyed or suffered by every other natural person, association of persons, or private corporation. * * *"

See also State v. Birmingham Southern Railway Co., 1913, 182 Ala. 475, 62 So. 77, and State v. West Point Mfg. Co., 1938, 236 Ala. 467, 183 So. 449.

The correctness of the foregoing decisions was recognized and affirmed by this court in its recent decision in Hamilton v. Adkins, 1948, 250 Ala. 557, 35 So.2d 183, 188, where it was said:

"Sections 211 and 217 are aimed at securing a practical and common sense equality in taxation. Exact equality is not to be expected nor is it required. In Moog v. Randolph, [1884], 77 Ala. 597, the court in referring to these two sections as they appear in the Constitution of 1875, said:

" 'It is settled that the general purpose of these clauses is to establish an ad valorem system of taxation, thus exacting a certain kind of uniformity in the rules of taxation, as applied to the property of all persons, whether private or artificial. * * *' "

In Hamilton v. Adkins et al., supra, this court recognized and approved the doctrine that systematic and intentional discrimination in the assessment of taxes is prohibited by §§ 211 and 217 of the state constitution and it was shown that this could result through the method of administration of a property tax statute even though the statute is fair on its face. In this connection the court in that case said:

" * * * It seems clear that the constitutional principle of uniformity of taxation may be infringed by the method of administration of a property tax statute, even though the statute is fair on its face. Discrimination in the assessment or valuation by administrative officers may result in violation of the equality clause of the Fourteenth Amendment to the Federal Constitution. (Citing authorities.) Before this result can be reached, however, it is necessary that the action of the administrative officials be more than mere error in judgment or result in more than inequality in valuation. It must be shown that the officials are chargeable with a purpose or design to discriminate by a systematic method * * * (citing cases).

" * * * In short there must be a systematic and intentional discrimination before the state constitution is violated. * * *

"We conclude that there was no intentional discrimination."

See also State v. Mobile & Ohio R. Co., 228 Ala. 533, 154 So. 91.

The principle referred to in Hamilton v. Adkins et al., supra, was stated by the Supreme Court of the United States in Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S.Ct. 1064, 1073, 30 L.Ed. 220. " * * * Though the law itself be fair on its face, and impartial in appliance, yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution. * * * "

■ From the foregoing cases it appears without question that systematic and intentional discrimination in the assessment of property taxes is prohibited by what are now sections 211 and 217 of the Constitution of 1901.

■ But it is very earnestly contended that for aught that appears from the bill the Alabama Power Company has not been treated differently from other public utilities. Stated differently, the argument means that since the Alabama Power Company is one of a class it has no grievance since all of the class are treated alike. So the question arises as to whether classification as to owners for tax assessment purposes is authorized under §§ 211 and 217 of the state constitution. In considering this question it is well to remember that §§ 211 and 217 apply to property taxes and not to franchise or privilege taxes. Authorities, therefore, dealing with franchise or privilege taxes are not applicable. Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402; Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627.

■ The state insists that §§ 211 and 217, which together with the due process clauses afford the equivalent of the equal protection to taxpayers, Hamilton v. Adkins, supra, must be tested by the rules applicable to the 14th Amendment to the Federal Constitution. This is not correct.

In about eight states [1] the state constitutions specifically authorize classification and assessment of different types of property and different rates of taxation to be applied thereto. For example the Constitution of West Virginia provides four separate classifications and four rates of taxation and California provides for· different classification. It seems that in these states there can be systematic and intentional classification of different types of property and different rates of taxation. In these states it appears that there is no violation of the respective state constitutions nor is there a violation of the equal protection clause of the 14th Amendment. Authorities from these states cannot be regarded as persuasive here.

The Supreme Court of the United States has held that the equal protection clause of the 14th Amendment is not nearly so narrow or "cramping" as state constitutions. In Nashville, Chattanooga & St. L. Ry. Co. v. Browning, 310 U.S. 362, 60 S. Ct. 968, 971, 84 L.Ed. 1254, that court said: " * * * Equally irrelevant are those cases in which this Court, because of the nature of the litigation, was construing the uniformity clause of a state constitution, and was not applying the Fourteenth Amendment. Greene v. Louisville & I. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280; Louisville & N. R. Co. v. Greene, 244 U.S. 522, 37 S.Ct. 683, 61 L.Ed. 1291. This Court has previously had occasion to advert to the narrow and sometimes cramping provision of these state uniformity clauses, and has left no doubt that their inflexible restrictions upon the taxing powers of the state were not to be insinuated into that meritorious conception of equality which alone the equal protection clause was designed to assure. * * *"

Also in Puget Sound Power & Light Co. v. King County, 1924, 264 U.S. 22, 44 S. Ct. 261, 263, 68 L.Ed. 541, the Supreme Court of the United States stated that it was considering the case "only from the standpoint of the Fourteenth Amendment to the federal Constitution", saying:

" * * * Counsel cite us cases which have little relation to the federal question before us. Johnson v. Wells Fargo & Co., 239 U.S. 234, 36 S.Ct. 62, 60 L.Ed. 243; Ewert v. Taylor, 38 S.D. 124, 160 N.W. 797; State ex rel. Owen v. Donald, 161 Wis. 188, 153 N.W. 238, and like cases involved the application of somewhat stringent provisions of state Constitutions as to equality of taxation on all kinds of property which left but little room for classification. * * *"

So decisions of the Supreme Court of the United States recognize that provisions of state constitutions as to equality and uniformity can be and often are more restrictive in their requirements than is the equal protection clause of the 14th Amendment. While the latter is not necessarily violated by classification, a state constitution such as that of Alabama is violated by classification for tax assessment purposes unless there is uniformity and equality among all taxpayers, "private corporations, associations and individuals alike," both as to ratio and percentage of taxation and also as to rate of taxation. Accordingly it is not correct to say that the Alabama Constitution which requires equality and uniformity in tax assessments and tax rates is as flexible and broad as the equal protection clause of the 14th Amendment.

There is nothing in the decision of this court in Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183, which is contrary to what has here been said. The court in that case was calling attention to the omission in the Constitution of 1901 of the equal protection clause of the Constitution of 1875, Art. 1, § 2, as follows: "That all persons resident in this state, born in the United States, or naturalized, or who shall have legally declared their intention to become citizens of the United States, are hereby declared citizens of the State of Alabama, possessing equal civil and political rights."

However, despite the omission of the foregoing clause from the Constitution of

1. California (1849); Georgia (1937); Illinois (1870); Kentucky (1915); Maryland (1915); New Jersey (1844); Virginia (1928), and West Virginia (1932).

1901, we said in substance that the due process clause coupled with §§ 211 and 217 afforded the equivalent of equal protection to a taxpayer to have his tax assessment uniform and equal with other taxpayers and not to be discriminated against by systematic or intentional assessment. The question of classification which we are considering now was not before the court in that case. However if any inference can be drawn from that opinion contrary to what is here said, that opinion is hereby corrected to conform hereto.

The state relies upon State v. Hall, 172 Ala. 316, 54 So. 560. That case is not authority here. It is enough to say that in that case the taxpayer offered to show the custom of the county commissioners in assessing property at sixty percent of its fair market value instead of 100 percent, the position of the taxpayer being that if her property be assessed at its fair cash value this would result in denial to her of the equal protection of the law because other property owners enjoy the benefit of assessment at only sixty percent of fair value. In the case at bar there is, as there was not in the Hall case, an allegation of an intentional and systematic undervaluation of the property of other taxpayers generally at less than forty percent and the valuation of appellee's property at sixty percent. The case of State v. Hall, supra, is referred to in the subsequent case of Penney v. State, 221 Ala. 230, 128 So. 596, 598, where the court referred to the acts of 1911 and noted that the provision of the revenue act was later eliminated, "evidencing a legislative purpose to return to the rule theretofore declared in our decisions." The court added: "It is the declared law by the decisions of the Supreme Court of the United States that arbitrary discrimination against a taxpayer, in the matter of valuation for tax purposes, deprives the owner of property without due process of law and denies him the equal protection of the law. But this rule is limited to an 'intentional and systematic' valuation of property below its real value, or the statutory percentage for tax purposes, while discriminating against the individual in purposely holding him to a higher basis of value. * * *"

Appellant expresses the view that our cases dealing with exemptions from ad valorem taxes in effect admit the principle of classification. It is quite true that exempting property from ad valorem taxes is not prohibited by §§ 211 and 217 of the Constitution. Accordingly property may be classified for exemption. In re Opinion of the Justices, 234 Ala. 358, 175 So. 690; Frazier v. State Tax Commission, 234 Ala. 353, 175 So. 402; State v. Birmingham Southern Ry. Co., 182 Ala. 475, 62 So. 77. But as to all property that is taxed, it must be taxed uniformly or equally at the same rate and ratio of assessment no matter by whom owned. State v. Alabama Fuel & Iron Co., 188 Ala. 487, 66 So. 169. In Proctor v. State, 215 Ala. 6, 109 So. 105, 106, it was said:

"Section 217 of the Constitution declares that: 'The property of private corporations, associations, and individuals of this state shall forever be taxed at the same rate. * * *'

"This section is a guaranty of uniformity and equality in the rate of taxation, and this requirement is fully met when a like tax is levied upon the same class of property by whomsoever owned. * * *"

Further the position is taken by appellant that classification is evidenced in the action of the legislature in providing for the assessment of property of public utilities in a separate chapter of the code, Chapter 10, Title 51, Code of 1940, which shows, it is claimed, that the State Department of Revenue was thereby given the power to assess such property on a separate and higher ratio. Before discussing the action of the legislature in providing for assessment of the property of public utilities in a separate chapter, we should consider further the matter of classification in the light of §§ 211 and 217 of the Constitution of 1901. We referred briefly to this subject in reference to exemptions. The legislature has the undoubted right to select certain species or classes of property for taxation. So it

may select one species or class and fail or refuse to select another species or class. For example it may select for taxation only real estate, with resulting exemption of personalty and vice versa. State v. Birmingham Southern Ry. Co., 182 Ala. 475, 62 So. 77. But once a species or class of property is selected by the legislature for taxation then the constitutional provisions come into play and all property of such species or class that is taxed must be taxed uniformly or equally at the same rate regardless of its ownership. Lee v. State Tax Commission, 219 Ala. 513, 123 So. 6. Once property is made taxable there is but one classification and that classification is property under the very language of the constitution.

■ In order to give a proper interpretation to §§ 211 and 217, they should be considered in the light of constitutional provisions, if any, which they supplanted, State v. Birmingham Southern Ry. Co., supra, and with a regard for the meaning of words and phrases usually accorded to them at the time they were used. Ex parte Pepper, 185 Ala. 284, 64 So. 112; O'Rear v. Sartain, 193 Ala. 275, 69 So. 554. Under the constitutions in effect before 1868 irregularities existed with respect to personal property by classes. Accordingly the provisions requiring taxation of land in proportion to its values so as to embrace all property was enacted. Authorities supra. It can hardly be contended that after all these years of constitutional history there is a power to classify land and personal property of one taxpayer and tax it on a different basis from the land and personal property of others in the face of §§ 211 and 217.

■ The word property as employed in §§ 211 and 217 is used to designate a certain subject of taxation, Western Union Telegraph Co. v. State Board of Assessment, 80 Ala. 273, 60 Am.Rep. 99; Capital City Water Co. v. Board of Revenue of Montgomery Co., 117 Ala. 303, 23 So. 970, as contrasted with other subjects of taxation such as persons, rights and privileges. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516; State v. Weil, 232 Ala. 578, 168 So. 679.

In 1924 the Kansas Constitution was amended so as to permit classification of certain species of property, Rev.Stat.Kan. 1935, nevertheless the Kansas Court has held that such amendment does not permit classification based on ownership. In Voran v. Wright, County Treasurer, et al., 129 Kan. 601, 284 P. 807, 810, the Kansas Court said: "Whatever may have been proper as to classification of owners under this section before the amendment, there can no longer be any question in that regard. A classification as to owners is not now permissible. The only classification authorized or tolerated by this constitutional provision is that of property, and it makes no difference by whom it may be owned, whether by individual, merchant, manufacturer, banking institution, or other corporation. Every classification is now limited to property, and only four kinds of property, viz., mineral products, money, mortgages, notes, and other evidence of debt. We recognize that this conclusion is not in harmony with the holding in the case of Davis-Wellcome Mortgage Co. v. Haynes, 119 Kan. 1, 237 P. 918, and the decision in that case will be overruled in so far as it attempted to recognize or sustain any classification other than that of property. The constitutional provision not only retains the requirement of a uniform and equal rate of assessment and taxation, but adds an exaction with reference to the four kinds of property subject to classification, that they be classified and taxed uniformly as to class as the Legislature shall provide, thus imposing upon the Legislature the imperative duty of providing for uniformity as to each class whenever and wherever it adopts or creates a classification of property."

■ What we want to make clear is that railroads and public utilities cannot be put in a class to themselves and their property taxed on a basis different from other taxpayers in the light of §§ 211 and 217 of the Alabama Constitution. If this were not true not only would §§ 211 and 217 of the Alabama Constitution be emasculated but the confusion which would result is apparent. It would mean that if a piece of real estate is owned by an individual, the

county tax assessor could assess the same at less than 40% of its value, while on the contrary if an adjacent piece of real estate is owned and occupied by a company which is a public utility as an office or store, it could be assessed at 60% of its value. No such power can be said to exist under the Alabama Constitution.

There is no doubt that carriers and other utilities have a "separateness" which affords a reasonable basis for classification under the equal protection clause of the 14th Amendment. This separateness grows out of such things as "the right of eminent domain, the use of public property, special franchise or public contracts" etc. Rapid Transit Corp. v. City of New York, 303 U. S. 573, 58 S.Ct. 721, 724, 82 L.Ed. 1024. But under §§ 211 and 217 there can be no distinction between taxpayers with different powers or who own different kinds of real or personal property, because all property must be taxed at the same rate by whomsoever owned. Authorities supra.

But since it is claimed that classification is shown in the action of the legislature in providing for the assessment of public utility property in a separate chapter of the code, we shall proceed to consider this contention, so that no cloud will be left hanging over the provisions of these sections of the code.

The use of the word classes or similar words in the statutes with respect to the assessment for taxation, § 1–188, Title 51, Code of 1940, has no significance here. These statutes simply contemplate that in assessing property the taxpayer or tax assessor shall list all the different kinds and types of property owned by the taxpayer. On one sheet the taxpayer lists his real estate and improvements thereon and on another sheet he lists his personal property. The personal property is then broken down into a considerable number of different types, classes or species of property set out in the printed form. This does not mean that any different ratio of assessment or valuation shall be applied to any one species or class as distinguished from the others but on the contrary all must be alike, equal or uniform. The reason for enumerating the various species or classes of property is to make sure that the taxpayer is listing for assessment and taxation all his property and not omitting or overlooking any. In this connection this court in Daffin v. Scotch Lumber Co., 226 Ala. 33, 145 So. 452, 455, said: "There can be no doubt that it was within the power of the tax assessor to classify the property listed, in making up the assessment roll, and to place the dwellings and log camps in the real estate column. 3 Cooley on Taxation, § 1065. And the mere fact that the aggregate value of the real estate was increased in this way, without increasing the aggregate value of the whole property over the previous year, did not require notice to the taxpayer."

The fact that properties of utilities, railroads, etc., are assessed by the Department of Revenue whereas other property is assessed by the county tax assessor makes no difference. In this case the properties of appellee are located in every county in the state except ten. They are, however, integrated into one operating system or unit. It is necessary therefore to ascertain the value of the entire system or operating unit and then allocate that to the various counties in which parts of its property are located. It often happens in the case of railroads that their properties lie in several states and yet all are integrated into one operating unit. In such a situation it is necessary to ascertain the value of the entire system and then allocate to Alabama its proportional share and within the state allocate to the various counties the value of properties in such counties. For these reasons the legislature provided that the department of revenue which has the personnel and machinery for doing this work be required to ascertain the assessed value of utilities and railroads, etc., and then pro rate it. Permitting the legislature to provide for utilities etc. to be assessed by the department of revenue "* * * relates merely to the *mode* of assessment and collection, and manifestly does not permit a departure from the requirements of uniform taxation in proportion to value, and an identical rate as between corporate and individual property, contained in §§ 171 and 174 (of the Kentucky Constitution). * * *" Greene v. Louisville & Interur-

ban R. R. Co., 244 U.S. 499, 512, 37 S.Ct. 673, 679, 61 L.Ed. 1280, 1287.

The duties of the department of revenue are set forth in Chapter 10, §§ 114–141, Title 51, Code of 1940. There is imposed on the department of revenue the general and complete supervision and control of the valuation, equalization and assessment of property and all other taxes for the state and counties "to the end that all taxable property in the state shall be assessed and taxes shall be imposed and collected thereon in compliance with the law, and that all assessments on property, privileges, intangible(s), and franchises in the state shall be made in exact proportion to the fair and reasonable market value thereof in substantial compliance with the law." Section 131, Title 51, Code of 1940.

We have mentioned these things in order to show that the legislature has made no effort to contravene the Constitution of the State but as stated above it could not do indirectly what the constitution forbids being done directly. Cummings v. Merchants National Bank, 101 U. S. 153, 25 L.Ed. 903; Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 76 L.Ed. 146.

Before leaving the subject of classification we point to the significance of the income tax amendment to the Constitution, Amendment No. XXV. In order to levy and collect an income tax it was necessary to amend our constitution so as to permit such tax, which is a direct tax, to be levied. Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300. The authors of the constitutional amendment recognized that an income tax was a direct tax the same as an ad valorem tax on property generally and, therefore, §§ 211 and 217 would require uniformity and equality. Accordingly the constitutional amendment expressly authorizes income tax to be on a graduated scale or basis and specifically provides that income should not be regarded or treated as property for ad valorem tax purposes. From this we can clearly assume that in drafting and adopting the income tax constitutional amendment, it was fully recognized that all taxable property in the state, by whomever owned, must

for ad valorem tax purposes be taxed uniformly and equally at the same rate and the same ratio of assessment.

Finally it is apparent that for aught that appears from the allegations of the bill of complaint the properties of Alabama Power Company were taxed at sixty percent of their fair and reasonable value and so the question arises as to why or how the Alabama Power Company is entitled to any relief. The principle of systematic and intentional undervaluation has been considered by the courts of this country for many years. It results from the assessment of certain property at the statutory ratio of assessment and the intentional and systematic assessment of the property of others at a lesser ratio. Such a discrimination has uniformly been held to be a violation of the principle of equal protection under constitutional provisions requiring uniformity. The question as to what relief the taxpayer under the circumstances is entitled to appears to have a plain answer under the authorities. In Taylor v. Louisville & N. R. Co., 6 Cir., 88 F. 350, 365, certiorari denied 172 U.S. 647, 19 S.Ct. 887, 43 L.Ed. 1182, the question is answered. "* * * The court is placed in a dilemma, from which it can only escape by taking that path which, while it involves a nominal departure from the letter of the law, does injury to no one, and secures that uniformity of tax burden which was the sole end of the constitution. To hold otherwise is to make the restrictions of the constitution instruments for defeating the very purpose they were intended to subserve. It is to stick in the bark, and to be blind to the substance of things. It is to sacrifice justice to its incident. * * *"

The foregoing case held that the railroad was entitled to have its assessment reduced to the same level that property generally was assessed and ordered a reduction accordingly. The Tennessee Constitution required equality and uniformity. The Tennessee statutes required assessments of full value. The evidence showed that railroad property was assessed at a higher level or ratio than property generally throughout the state was assessed. Accordingly the court said it was placed in a dilemma as be-

tween the constitutional requirement of equality and uniformity and the statute requiring assessment at full value, whereas property generally was assessed at much less than full value.

In the case of Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 191, 67 L.Ed. 340, the Supreme Court of the United States said: "* * * The dilemma presented by a case where one or a few of a class of taxpayers are assessed at 100 per cent. of the value of their property in accord with a constitutional or statutory requirement, and the rest of the class are intentionally assessed at a much lower percentage in violation of the law, has been often dealt with by courts and there has been a conflict of view as to what should be done. There is no doubt, however, of the view taken of such cases by the federal courts in the enforcement of the uniformity clauses of state statutes and constitutions and of the equal protection clause of the Fourteenth Amendment. The exact question was considered at length by the Circuit Court of Appeals of the Sixth Circuit in the case of Taylor v. Louisville & Nashville R. R. Co., [6 Cir.] 88 F. 350, 364, 365, and the language of that court was approved and incorporated in the decision of this court in Greene v. Louisville & Interurban R. R. Co., 244 U.S. 499, 516, 517, 518, 37 S.Ct. 673, 61 L.Ed. 1280. * * *"

In Greene v. Louisville & Interurban R. R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, the court quoted with approval similar language from the Taylor case, supra, and followed the holding that the railroad was entitled to a reduction in its assessment to the level that other property generally was assessed throughout the state.

In Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 51, 76 L.Ed. 146, the court said:

"* * * The undervalued property is in effect valued at less than 50 per cent. of its actual value; for example, coal of the same description worth twice as much, as that of the Cumberland Coal Company was really valued at 25 per cent. of its actual value.

"The petitioners are entitled to a readjustment of the assessments of their coal so as to put these assessments upon a basis of equality, with due regard to differences in actual value, with other assessments of the coal of the same class within the tax district."

The court in referring to the dilemma where the constitution requires equality and a statute requires a certain percent of value said: "* * * This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

■■■ We make it clear that the taxpayer whose property the assessing authorities have assessed on a basis considerably more than the basis on which other property is intentionally and systematically assessed is not required to undertake to have the property of other taxpayers which is intentionally and systematically assessed on a lower basis increased to the basis which the complaining taxpayer is assessed. The Supreme Court of the United States has laid at rest all doubt about any such remedy and has held that it is no remedy at all. In the case of Hillsborough Tp., Somerset County, v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 448, 90 L.Ed. 358, discrimination in ratio of valuation or assessment was involved and was held to be illegal and unconstitutional. This case arose in New Jersey where there was a state statute which prescribed that under such condition the only remedy afforded the taxpayer was by a proceeding against other taxpayers for the purpose of having their taxes increased rather than having the complaining taxpayer's assessment reduced. The Supreme Court held that the remedy was not adequate nor did it afford constitutional protection, saying: "* * * The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him

against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class. Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445-447, 43 S. Ct. 190, 191, 192, 67 L.Ed. 340; Iowa-Des Moines Nat. Bank v. Bennett, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265; Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 28, 29, 52 S.Ct. 48, 50, 76 L.Ed. 146. * * *"

In Iowa-Des Moines Nat. Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 136, 76 L. Ed. 265, the Supreme Court likewise said: "* * * But it is well settled that a taxpayer who has been subjected to discriminatory taxation through the favoring of others in violation of federal law cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid. Cumberland Coal Co. v. Board of Revision, supra; Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 514-518, 37 S.Ct. 673, 61 L.Ed. 1280; Chicago Great Western Ry. Co. v. Kendall, 266 U.S. 94, 98, 45 S.Ct. 55, 69 L.Ed. 183; Sioux City Bridge Co. v. Dakota County, supra. Nor may he be remitted to the necessity of awaiting such action by the state officials upon their own initiative."

In Taylor v. Louisville & N. R. Co., 6 Cir., 88 F. 350, 364, certiorari denied 172 U. S. 647, 19 S.Ct. 887, 43 L.Ed. 1182, the contention was disposed of in these words: "* * * It is said on behalf of the defendants that the only method consistent with the constitution is by raising the assessments of the real and personal property. This is no remedy at all. * * * The absolute futility of such a course, the enormous expense, and the length of time necessary in attempting to follow it, need no comment. * * *"

See also Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340.

The appellee is entitled to show by due proof, if it can, that the facts alleged in the bill of complaint are true and of course must prove the allegations of the bill be-

fore it is entitled to relief. As stated at the outset on demurrer we assume as true the facts as alleged in the bill. We think the bill has made out a case of relief for the appellee which the court has the power to grant in this proceeding. Section 140, Title 51, Code of 1940.

It results that the decree of the lower court is correct and must be affirmed.

Affirmed.

BROWN, LIVINGSTON, LAWSON. and SIMPSON, JJ., concur.