INDEPENDENT SCHOOL DISTRICT NO. 99 AND
OTHERS v. COMMISSIONER OF TAXATION.
MINNESOTA POWER & LIGHT COMPANY, INTERVENOR.

211 N. W. 2d 886.

October 19, 1973—No. 43428.

*Peterson & Popovich, James E. Knutson, Peter S. Popovich,*
and *Ivars J. Krafts,* for relators.

*Warren Spannaus,* Attorney General, and *Ronald S. London*
and *Edwin P. Lee,* Special Assistant Attorneys General, for
respondent commissioner.

*Sullivan, Hanft, Hastings, Fride & O'Brien, Edward T. Fride,*
and *Raymond L. Erickson,* for intervening respondent.

ROGOSHESKE, JUSTICE.

Certiorari by relators, all local tax assessing authorities, to review a decision of the Tax Court affirming respondent commissioner of taxation's order reducing the assessed valuation for 1966 for ad valorem tax purposes of portions of the structures and machinery of the Thomson Hydroelectric Station, owned by Minnesota Power & Light Company, intervening respondent taxpayer. Because we are unable to determine upon the record submitted that the Tax Court, in affirming the commissioner's order, made a de novo determination of the ultimate issue necessarily presented, namely, the market value of the property for tax purposes pursuant to statutory mandates as interpreted and applied by our prior decisions, and because the application of a formula alone for determining market value would be arbitrary and unreasonable, we reverse and remand to the Tax Court for further proceedings consistent with this opinion.

The structures and machinery of the hydroelectric station are a portion of the land and water rights of the taxpayer located on the St. Louis River in Thomson Township, Carlton County. The station was constructed in 1907 by the Great Northern Power Company. The original construction cost of the structures and machinery was $5,253,230.33. In 1927, the taxpayer purchased the station from Great Northern Power Company. The tax assessing authorities claim the purchase price was $11,631,770.82, representing $6,379,000 over the original cost of construction. Numerous improvements, additions, and machinery replacements were made between 1907 and 1966.

In August 1966, the assessed value of the property in question was fixed by the tax assessing authorities in which it was located at $1,081,646.[1] On November 15, 1966, in response to taxpayer's petition, the commissioner of taxation, acting pursuant to his

---

[1] In 1966, the assessed value for the type of property here involved was determined by computing 33 1/3 percent of the true and full value, which true and full value was 33 1/3 percent of the market value.

authority to reduce the assessed valuation of any real or personal property[2] and in accordance with a newly devised formula for assessing utility properties, issued an order reducing the assessed value from $1,081,646 to $906,230. Presumably because of the lowering of the value of the tax base, the Carlton County Board of Commissioners, by formal motion, refused to accede to the commissioner's order and, joining with the taxing districts, appealed to the Tax Court. Intervening taxpayer, whose petition to reduce the assessed value of its property to $468,133 was denied by the commissioner's order, also appealed. At the extensive de novo trial before the Tax Court, the evidence introduced was primarily directed to supporting or rebutting the claim of the tax assessing authorities that the so-called 1962 formula—adopted and applied since 1962 as the sole basis by which the market value of all Minnesota utility properties was to be determined for ad valorem tax purposes and upon which the order reducing the assessed value of the property in question was based —was arbitrary, capricious, and unreasonable. Aided by expert opinion testimony, the tax assessing authorities presented various formulas to value utility properties—including replacement cost, capitalized earnings, comparable sales, indexed cost, and reproduction cost new less depreciation—all seeking to establish that the commissioner's original-cost approach embodied in the 1962 formula did not adequately reflect the market value of the property and that reproduction cost new less depreciation together with a consideration of all other factors or methods of valuation was the proper approach. Taxpayer produced other experts who testified that, although the original-cost approach may not reflect the value of certain types of property, it is a proper approach in valuing utility properties.

---

[2] Minn. St. 270.11, subd. 6, provides: "The commissioner of taxation shall raise or lower the assessed valuation of any real or personal property, including the power to raise or lower the assessed valuation of the real or personal property of any individual, copartnership, company, association, or corporation; * * *." See, also, § 270.06(1).

There appears to be no disagreement that some type of formula is normally employed by taxing authorities throughout the United States for valuation for tax purposes of utility properties.[3] It also appears without challenge that in 1961, when a new commissioner was appointed, there was a necessity to design and adopt some type of formula to replace the method of valuation used prior to his taking office because, the commissioner determined, the so-called unit-method formula, employed since 1940,[4] was neither a satisfactory nor uniformly applied method of valuing utility properties.[5] In 1961, the commissioner and his staff began studying the problem. After examining valuation methods used in other states and consulting with representatives of various utility companies,[6] he announced on May 31, 1962, by letter to the county assessing authorities, a change in the basis for valuation:

"The new method of valuing the property of electric utility and petroleum and gas pipeline companies which we have decided to adopt, beginning with the year 1962, will be based on cost. From this will be deducted depreciation of 25% in the case of property over ten years old. New property will be depreciated at the rate of 2 1/2% a year for the first ten years. In all instances this depreciated cost will be equalized at 33 1/3%. By allowing only 25% depreciation, we are recognizing appreciation in value of older property.

---

[3] Apart from the fact of the uniqueness of the real and personal property and the utility's status as a regulated monopoly, the primary reason and justification for the use of a formula is that neither the local authorities nor the staff of the commissioner is adequate or always qualified to make periodic, personal, on-the-spot appraisals of each article or description of property. It was admitted that no such appraisal was made by the commissioner's staff of the subject property.

[4] The record lacks any comprehensive disclosure of the valuation formula applied prior to 1962.

[5] See, In re Petition of Dulton Realty, Inc. v. State, 270 Minn. 1, 132 N. W. 2d 394 (1964).

[6] The tax assessing authorities complain that they were not consulted.

"Cost of replacement will be considered as new cost. The depreciated cost of the item replaced or retired may be deducted from the cost of replacement in determining the net taxable cost. This net cost will be allowed depreciation at the same rate as new property.

\* \* \* \* \*

"Presently [utility real property is] for the most part assessed at 45% of original cost. Where special obsolescence problems have developed, a lower percentage may have been applied. In 1962, the method of assessing will be substantially the same for real property as for personal property of utilities. New installations will be assessed at 33 1/3% of cost. 2 1/2% of depreciation will be allowed each year for ten years and a residual value of 75% of cost will be maintained until the facility is removed. All changes of assessment, after removals and additions have been accounted for, are to be limited to 10%."

As the Tax Court found, application of this original-cost-less-limited-depreciation formula, when first adopted in 1962, necessitated substantial adjustments in many taxing districts and "[i]n order that no taxing district would suffer material losses in taxable value and no taxpayers would be subjected to drastic increases," the commissioner authorized a 10-percent limit each year in changes in valuation based on the new formula. In 1966, the commissioner canceled the upward transitional differentials.[7] The tax assessing authorities challenge the 1962 formula arguing that the formula does not reflect market value and that a different formula should be used.[8]

The critical as well as the only disputed finding of the Tax Court challenged here is:

"Appellants [the tax assessing authorities] herein have chal-

---

[7] See, In re Petition of Dulton Realty, Inc. v. State, *supra.*

[8] Although the 1962 formula was applied from 1962 through 1965 as the basis for valuing all Minnesota utility properties, including the subject properties, no prior adjudicated challenge to the formula has been made.

lenged the application of the Commissioner's 1962 formula as arbitrary, unreasonable and capricious. The Court finds that the Commissioner's 1962 formula is not arbitrary, capricious or unreasonable. Its adoption by the Commissioner in 1962 and its application as reflected in the Order of November 15, 1966, here challenged, is within the legal authority conferred on the Commissioner."

As conclusions of law, the court determined:

"The Order of November 15, 1966, was properly issued by the Commissioner in his status as Commissioner of Taxation.

"The Commissioner's formula, as adopted in 1962 and applied thereafter, is not arbitrary, capricious or unreasonable and is within the legal authority conferred upon the Commissioner of Taxation.

"The Commissioner of Taxation's Order of November 15, 1966, is affirmed in its entirety."

As we interpret the findings and accompanying memorandum, the Tax Court did not, perhaps understandably because of the confusion at the outset of the hearings, determine de novo the market value of the property.[9] Rather, it decided that the 1962 formula which the commissioner applied to reduce the assessed value was a reasonable formula which, of all the formulas available, "comes closest" to determining market value. Absent from the findings is a specific determination of market value even though the parties, as well as the memorandum of the Tax Court, acknowledge that the "sole" or "basic," and in our view necessarily the ultimate, question presented was the "market value" of the structures and machinery of the so-called Thomson plant.

In 1966, our statutory scheme for determining valuation of properties for tax purposes mandated that (Minn. St. 1965, § 273.11)—

---

[9] Minn. St. 271.06, subd. 6, provides in part: "The tax court shall hear, consider, and determine every appeal de novo upon the issues made by the notice and the return."

"[a]ll property shall be assessed at its true and full value in money. In determining such value, the assessor shall * * * value each article or description of property by itself, and at such sum or price as he believes the same to be fairly worth in money. * * *"

That section further provided that in assessing improved property the value of the land, the value of the structures, and the aggregate value shall be determined. Section 272.03, subd. 8, provided that "full and true value" was the "usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale." Finally, § 273.12 imposed a duty on every "assessor and board, in determining the value of lands for the purpose of taxation, * * * to consider and give due weight to every element and factor affecting the market value * * *."

The difficulty we have with the formula approved by the Tax Court is that it makes market value synonymous with original cost, taking into account limited depreciation, and gives no weight to other factors affecting market value. As we have indicated in numerous decisions, original cost is only one of several relevant factors which should be considered in determining market value. See, e.g., Crossroads Center, Inc. v. Commr. of Taxation, 286 Minn. 440, 176 N. W. 2d 530 (1970) ; Alstores Realty, Inc. v. State, 286 Minn. 343, 176 N. W. 2d 112 (1970). The reason other factors such as reproduction cost, earning capacity, and comparable sales prices should also be considered is because the statutes referred to, read together, require that assessing authorities "consider and give due weight to every element and factor affecting market value thereof * * *." § 273.12.

Notwithstanding the fact that the formula does not give due weight to other factors bearing on market value, the commissioner and the taxpayer offer a number of justifications for use of the formula. One of the justifications advanced is that the formula results in uniformity of application. Even apart from the

doubtful assertion that the use of the formula promotes uniformity of valuation, there has been no showing that compliance with statutory mandates requiring consideration of all relevant factors violates the uniformity principle.

A more persuasive argument advanced in support of the use of an original-cost-less-depreciation formula in utility valuation cases is that, because of the regulated nature of the utility industry, the most that a willing buyer would pay for such property is net book cost. More specifically, the argument is that a willing buyer would not pay more for the utility property than the amount on which he would be able to earn a fair return, and since utility rates are based on net book cost, the buyer would know that if he paid more than net book cost he would not be able to earn a fair return. A main difficulty with this position is that the rate-making procedure of Minnesota utilities is only partially regulated: The state itself apparently provides no such regulation, and the Federal Power Commission does so only with respect to power sold for resale, which, the record suggests but does not establish, amounts to only about 10 percent of the total power produced by the subject property. But the argument especially loses force when one considers the fact that when taxpayer bought the station in 1927, it paid considerably more for it than its net book value. In this respect the New Hampshire Supreme Court made the following relevant comment in an opinion relating to tax valuation of utility property (Public Service Co. v. New Hampton, 101 N. H. 142, 151, 136 A. 2d 591, 598 [1957]):

"In connection with [the argument] that net book cost and the value for tax purposes must be the same, it seems that, among other considerations, changing price levels would render such a method impractical and unfair. The inequities of holding rigidly to the formula of net book cost for tax purposes can well be illustrated by assuming two approximately equivalent plants in the same town, the first built in an era of high costs, such as the present, and the second built in a low-cost era such as we encountered in the '30s and may well experience in the future. Ap-

plying the net book cost theory * * * the town would be entitled to a higher tax value on the older [more expensive] plant than on the newer one [built in the depression], though the latter was performing the same function, was equally well constructed, and contained newer and less worn equipment."

Another argument is that use of the formula makes for simplicity of administration. Undoubtedly, this is true. However, in the absence of express legislative authority to employ a unique formula for valuing utility properties distinct from other taxable properties, administrative considerations cannot justify completely ignoring the statutory mandates that due weight be given to all factors affecting market value.

Despite difficulties in appraising utility properties, the seeming necessity for some type of formula, and the evidence which supports the Tax Court's conclusion that in devising the formula the commissioner was acting reasonably and within his authority to achieve a just, fair, and uniform valuation of such properties, the record makes inescapable our conclusion that determining the market value of the subject property by application of the formula alone ignores the statutory mandates for assessing properties and is therefore arbitrary and unreasonable.

In rejecting the formula as applied to this case, we do not mean to suggest that in any individual case the one making the determination of market value might not, after considering all factors, conclude that original cost less limited depreciation most closely approximates market value. Our concern is that the reasoning of the Tax Court is susceptible of being interpreted as holding that in all cases the market value of all utility properties can be determined by application of the 1962 formula alone. If we could conclude that the Tax Court intended no such interpretation and that it did (although not specifically) determine the market value upon a consideration of every factor affecting it (as its memorandum does seem to suggest), we could uphold the Tax Court's decision. Since we cannot conclude that the Tax Court determined the ultimate question which would be disposi-

tive of the dispute between the tax assessing authorities and the taxpayer and the commissioner, i.e., the market value of the properties for the tax assessment year 1966, established in accordance with statutory mandates, we must reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

MR. JUSTICE TODD took no part in the consideration or decision of this case.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.