Allison CONTOS, et al., Appellants,

v.

Robert L. HERBST, Individually, and as Commissioner of the Minnesota Department of Natural Resources, et al., Respondents,

Andrew Korda, Individually, and as Auditor for St. Louis County, Respondent,

Minnesota Chippewa Tribe, Respondent.

No. 47346.

Supreme Court of Minnesota.

Jan. 26, 1979.

Rehearing Denied March 13, 1979.

Hanft, Fride, O'Brien & Harries and Tyrone P. Bujold and Paul J. Lokken, Duluth, for appellants.

Warren Spannaus, Atty. Gen., C. Paul Faraci, Deputy Atty. Gen., Philip Olfelt, Asst. Atty. Gen., Stephen G. Thorne, Sp. Asst. Atty. Gen., Keith Brownell, County Atty., Leo McDonnell, Asst. County Atty., Duluth, Kent Tupper, Walker, for respondents.

KELLY, Justice.

In 1969 the legislature enacted Minn.St. 93.52, which required every owner of a fee simple interest in minerals which interest is owned separately from the fee title to the surface of the property [hereinafter referred to as severed mineral interests] to file for record a verified statement describing that interest with the register of deeds or the register of titles in the county where the interest is located. Minn.St. 93.52,

subd. 2. The purpose of this requirement, as stated by the legislature, was:

> " * * * [T]o identify and clarify the obscure and divided condition of severed mineral interests in this state. Because the ownership condition of many severed mineral interests is becoming more obscure and further fractionalized with the passage of time, the development of mineral interests in this state is often impaired. Therefore, it is in the public interest and serves a public purpose to identify and clarify these interests." Minn.St. 9352, subd. 1.

Notice of the registration requirement was provided by publication of the legislation in legal newspapers within each county of the state and in two publications related to mining activities having nationwide circulation. Minn.St.1971, § 93.58.

In 1973 the legislature enacted additional legislation concerning severed mineral interests which is the basis for this action. L.1973, c. 650, art. XX hereafter referred to as mineral registration act. First, the legislature provided that anyone who failed to file the verified statement within the statutory period would forfeit that interest to the state. The only remedy for persons claiming an ownership interest at the time of forfeiture was the recovery of the fair market value of the mineral interest at the time of the forfeiture or at the time of trial, whichever is lesser. Minn.St. 93.55. The legislature found the additional legislation necessary "to provide adequate identification of [severed mineral interests] and to prevent the continued escape from taxation of obscure and fractionalized severed mineral interests." Minn.St. 272.039.

Secondly, the legislature subjected severed mineral interests not otherwise taxed to a tax of $.25 per acre per year or $2.00 per interest per year, whichever is greater. Minn.St. 272.04, subd. 1; 273.13, subd. 2a. In describing the basis for implementing the tax the legislature enacted the following:

> "The legislature finds, for the reasons stated below, that a class of real property has been created which, although not ex-

empt from taxation, is not assessed for tax purposes and does not therefore, contribute anything toward the cost of supporting the governments which protect and preserve the continued existence of the property. These reasons are as follows: (1) In the case of *Washburn v. Gregory*, 1914, 125 Minn. 491, 147 N.W. 706, the Minnesota Supreme Court determined that where mineral interests are owned separately from the surface interests in real estate, the mineral interest is a separate interest in land separately taxable, and does not forfeit if the overlying surface interest forfeits for nonpayment of taxes due on the surface interest; (2) Since this 1914 decision, mineral interests owned separately from the surface have been valued and assessed for tax purposes, as a practical matter, only if the value of the minerals has been determined through drilling and drill core analysis, and (3) The absence of any taxation of mineral interests owned separately from the surface, except where drilling analysis is available, has encouraged the separation of ownership of surface and mineral estates and resulted in the creation of hundreds of thousands of acres of untaxed mineral estate lands which thus are immune from tax forfeiture. The legislature also finds that the province of Ontario in Canada, which has land ownership patterns and mineral characteristics similar to that of Minnesota, has imposed a tax of $.50 an acre on minerals owned separately from the surface since 1968, and $.10 an acre before that. The legislature further finds that the identification of separately owned mineral interests by taxing authorities requires title searches which are extremely burdensome and, where no public tract index is available, prohibitively expensive. This result is caused in part by the decision in *Wichelman v. Messner*, 1957, 250 Minn. 88, 83 N.W.2d 800, where the so called '40 year law' was held inapplicable to mineral interests owned separately from surface interests. On the basis of the above findings, and for the purpose of requiring mineral interests owned separately from surface interests to contribute to the cost

of government at a time when other interests in real property are heavily burdened with real property taxes, the legislature concludes that the taxation of severed mineral interests as provided in section 273.13, subdivision 2a is necessary and in the public interest, and provides fair taxation of a class of real property which has escaped taxation for many years * * *." Minn.St. 272.039.

Plaintiffs, owners of severed mineral interests situated primarily in northern Minnesota, brought this action seeking a declaration that the registration, forfeiture and tax provisions of the mineral registration act are unconstitutional and an injunction prohibiting their enforcement. The district court, siting without a jury, entered findings of fact which agreed with the legislative findings quoted previously. In addition the district court incorporated in its findings a description of the history and magnitude of the severed interest phenomenon contained in an amicus brief prepared by attorney W. K. Montague for the case of *Kangas-Jacobsen Dairy, Inc. v. Lloyd-Smith*, 241 Minn. 317, 62 N.W.2d 915 (1954):

"They [severed mineral interests] are of wide extent: the entire length of the Mesabi Range from Gunflint Lake * * down to Grand Rapids, to a width of probably twenty miles from the iron formation, is blanketed with mineral reservations, on each side of the east end of the Mesabi Range through Lake and Cook counties down to Lake Superior, a distance of fifty to sixty miles, nearly every forty has a mineral reservation. Large areas in Carlton and Crow Wing Counties are similarly covered. While we are not familiar with details of mineral reservations in other Northern Minnesota counties, we understand they are not uncommon. Every city and village on the Mesabi Range from Aurora through Eveleth, Virginia, Chisholm, Hibbing, down to Coleraine, is located on lands subject to mineral reservations. Every home, store, factory and farm in that area is subject thereto."

The district court's findings of fact concerning the taxation of severed mineral interests also incorporated a description contained in the amicus brief of attorney Montague:

"In a substantial number of cases the reservations [severed mineral interests] were created as a result of the tax laws, and do not represent arm's length negotiations between parties. They represent deliberate attempts to arrange a transaction under which the grantor could retain for generations his speculative interest in the minerals without carrying charges, and, if merchantable ore should ever be discovered, could re-acquire the surface without cost."

The district court specifically found that 140,000 to 145,000 acres of the 721,640 acres of severed mineral interests owned by plaintiff United States Steel were created through a series of transactions between United States Steel and its subsidiaries whose purpose was to avoid ad valorem property taxes on property valuable primarily for its mineral potential. The district court further found that plaintiffs paid ad valorem property taxes on approximately 3,212 of their 1,262,664 acres of severed mineral interests.[1] Reference to additional findings of fact follows where appropriate.

Based on its findings of fact the district court concluded that the registration, taxation, and forfeiture provisions were constitutional but that the procedures attending the forfeiture provisions were unconstitutional. By virtue of the latter conclusion the district court further concluded that defendants be enjoined from claiming or asserting an ownership in plaintiffs' mineral interests by reason of the forfeiture procedures. Judgment was entered accordingly. Plaintiffs appeal from that part of the judgment upholding the registration, taxation and forfeiture provisions; defendants appeal from that part of the judgment invalidating the procedures attending forfeiture and granting injunctive relief. We affirm the judgment of the district court in all respects.

The issues presented are the following: (1) Whether the classification of severed mineral interests for purposes of taxation violates the uniformity clause of the Minnesota Constitution; (2) whether the uniformity clause of the Minnesota Constitution requires that taxation of property be related in some way to its value; (3) whether the forfeiture provisions violate the due process clauses of the state and Federal constitutions; (4) whether the procedures attending the forfeiture provisions comport with the due process clauses of the state and Federal constitutions; and (5) whether the language governing the registration requirements is unconstitutionally vague.

■■■ 1. The uniformity clause of the Minnesota Constitution reads in part:

"Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes * * *." Minn.Const. art. 10, § 1.

In applying that provision we have stated that the legislature has a wide discretion in classifying property for purposes of taxation.[2] Where the classification has a reasonable basis in fact, the judgment of the legislature will not be disturbed. See *Johnson v. Donovan*, 290 Minn. 421, 188 N.W.2d 864 (1971); *State v. Minnesota Farmers' Mut. Ins. Co.*, 145 Minn. 231, 176 N.W. 756 (1920). Every presumption being invoked in favor of the constitutionality of an act of the legislature, plaintiffs have the burden of proof to show beyond a reasonable doubt that the act conflicts with the uniformity clause of the state constitution. See *Elwell v. County of Hennepin*, 301 Minn. 63, 221 N.W.2d 538 (1974).

---

1. Of the 3,212 acres the majority were taxed at $1.00 per acre pursuant to the tax on unmined taconite. Minn.St. 298.26.

2. The uniformity clause of our state constitution is no more restrictive upon the legislature's power to tax or classify than is the Equal Protection Clause of the Fourteenth Amendment. *Elwell v. County of Hennepin*, 301 Minn. 63, 221 N.W.2d 538 (1974). The United States Supreme Court has stated that where taxation is concerned and no specific Federal right, other than equal protection, is involved, the states have considerable discretion. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).

Plaintiffs contend that they have met their burden in that the record shows that there is no difference between severed and unsevered mineral interests which can constitutionally justify the tax imposed on the former[3] without similar treatment of the latter. Specifically plaintiffs argue that, to the extent severed mineral interests have gone untaxed, so too have unsevered mineral interests escaped taxation. In addition plaintiffs argue that the practical problems attending the taxation of severed mineral interests; i. e., the difficulty in valuating and assessing severed mineral interests, apply with equal force to unsevered mineral interests. We disagree with plaintiffs' view of the record.

Upon the evidence the district court entered the following finding of fact:

"Where taxable real property includes the rights to both surface and mineral interests (estates), the assessed valuation, and hence the property tax levied, reflects the value, if any, assigned by market forces to the totality of these rights. Plaintiffs have failed to demonstrate that such 'unsevered' mineral rights have, like severed mineral interests, escaped ad valorem property taxation."

This finding is supported by the testimony of Peter N. Handberg, the St. Louis County Assessor. He testified that in determining the "market value" of a parcel of land for tax purposes he looks to "sales of comparable properties wherever they are available," and that for rural lands (which account for the bulk of severed mineral interests) "sales are the only basis" for determining market value. These comparisons are made on the

assumption that the entire "bundle of rights" that comprise the fee simple interest in the parcel, including mineral rights, are merged in one owner.

 The value determined by this method might very well be affected by the value of the mineral rights. Mr. Handberg so testified in response to a question put to him by one of plaintiffs' attorneys:

"Q. Now, as a practical matter, in St. Louis County, with the exception of the Mesabi or Biwabik Iron formation * *, would you agree that the practice is and has been as long as you have known it, not to include the value of the minerals in arriving at an assessment where there is no objective evidence or reliable data to indicate whether or not there are minerals located therein?

THE WITNESS [Mr. Handberg]: I don't think that's a correct statement. I think that the value we put on the property based on sales of similar property do include a mineral value. For example, if the property is sold in an area where the mining companies are interested or many properties are sold, it drives up the sales prices of the property, and so we use the sale prices as a basis of our valuation."

The fact that assessors may not value mineral interests as a separate item is not significant. As Mr. Handberg's testimony clearly shows the value of a piece of property is a composite of a number of factors, one of which includes the value of the mineral interests if unsevered. Cf. *Independent School Dist. No. 99 v. Commr. of Taxation*, 297 Minn. 378, 211 N.W.2d 886 (1973).

**3.** The pertinent provisions of Minn.St. 273.13, subd. 2a, which subjects severed mineral interests to taxation, read in part: "Class 1b. 'Mineral interest', for the purpose of this subdivision, means an interest in any minerals, including but not limited to gas, coal, oil, or other similar interest in real estate, which is owned separately and apart from the fee title to the surface of such real property. Mineral interests which are filed for record in the offices of either the county recorder or registrar of titles pursuant to sections 93.52 to 93.58, constitute class 1b, and shall be taxed as provided in this subdivision unless specifically excluded by this subdivision. A tax of $.25 per acre or portion of an acre of mineral interest is hereby imposed and is due and payable annually. If an interest filed pursuant to sections 93.52 to 93.58 is a fractional undivided interest in an area, the tax due on the interest per acre or portion of an acre is equal to the product obtained by multiplying the fractional interest times $.25, computed to the nearest cent. However, the minimum annual tax on any mineral interest is $2. No such tax on mineral interests is due and payable on the following: (a) Mineral interests valued and taxed under other laws relating to the taxation of minerals, gas, coal, oil, or other similar interests; (b) Mineral interests which are exempt from taxation pursuant to constitutional or related statutory provisions * * *."

In determining market value of property for ad valorem tax purposes, assessing authorities should consider and give due weight to every element and factor affecting market value. Therefore the district court's finding that unsevered mineral interests are valued and taxed under the normal ad valorem property tax system is adequately supported by the evidence. Since none of the parties disputes the district court's findings that severed mineral interests have escaped taxation, we cannot say that the separate classification of severed mineral interests is without a reasonable basis in fact. *Johnson v. Donovan, supra.*

Concerning the separate taxation of severed mineral interests the district court made two critical findings. First, the district court found that most severed mineral interests cannot be assessed for ad valorem property tax purposes for two reasons:

"(1) The value of the mineral in the ground can only be determined by prohibitively expensive exploration such as drilling and drill core analysis; and

(2) Data currently available to assessors on sales and exchanges of the property rights in mineral estates (i. e., severed mineral interests) is very limited. Therefore, in most cases such available data is insufficient to permit the derivation of market values for individual severed mineral interests from the sales prices or values of comparable interests."

Second, the district court found that every mineral interest in Minnesota has some value as a property interest regardless of its location, although the value of mineral interests may vary from one part of the state to another. The first finding is not contested.

Plaintiffs vigorously contest the second finding. They rely on the expert testimony of Donald Lindgren, a geologist, who testified that the value of plaintiff's mineral interests vary widely in value, some having no economic value at the present time. The record also contains, however, testimony of other expert witnesses who detailed the abundance and distribution of minerals within the state, the history of mineral development, and the potential for future development. Even Mr. Lindgren testified to the potential for future development. On this record we cannot say that the district court's finding is clearly erroneous.

In sum the evidence supports the legislature's findings that a class of valuable property interests were escaping taxation because of the practicable difficulties in identifying, valuing, and assessing those interests within more traditional tax schemes. In light of this evidence we cannot say that the practical considerations which prompted the legislature to classify separately severed mineral interests and to impose a tax of $.25 per acre per year or $2.00 per year, whichever is greater, were unreasonable.

That practical considerations can serve as the basis for the classification and taxation of property was established long ago in *Mutual Benefit Ins. Co. v. County of Martin*, 104 Minn. 179, 116 N.W. 572 (1908).[4] There this court upheld the taxation of mortgages separately from other personalty with the following language:

"There were good and sufficient reasons why a special method should be devised for the taxation of this kind of property. It is a notorious fact that the owners of securities in the form of bonds and notes have not been in the habit of paying their proportionate share of the taxes. This has been due in a measure to the ease with which the existence of such property can be concealed from the tax officials. But when the owner of a note takes a mortgage on real estate as security and places it upon the public records, he exposes his ownership * * * and enables the assessor to reach him. * * The owner is thus tempted to seek some devious method for escaping taxation, in order that he may be on an equality with the owner of an unsecured note or bond, which rests undiscovered in a safety deposit vault. * * * *Experience has*

4. The United States Supreme Court has also recognized practical considerations as sufficient bases for state tax classifications. See *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

*shown that it is very difficult, if not impossible, to fairly and successfully tax this kind of property under the system ordinarily applied to personal property. This practical difficulty alone furnishes a basis for a classification, and justifies the legislature in devising a special method for the taxation of the subjects of that class.* * * * By requiring a registration tax, every mortgage security pays a moderate tax, and this, in the judgment of the legislature, is preferable to the certain uncertainties of the old system." (Emphasis added.) 104 Minn. 182, 116 N.W. 574. Cf. *Johnson v. Donovan, supra.*

We think the reasoning in the *Mutual Benefit* case applies with equal force here. Here the taxation of severed mineral interests in the same manner as other realty proved to be impracticable and also, because of this impracticability, had encouraged the separate ownership of surface and mineral estates. A class of property having some value was not paying its proportionate share of taxes. The remedy chosen by the legislature was to tax mineral interests on a uniform basis, which is but one part of the general system of mineral taxation. The tax is imposed only on those mineral interests not "valued and taxed under other laws relating to the taxation of minerals, gas, coal, oil or other similar interests." Minn.St. 273.13, subd. 2a. For example: the state tells us that where the value of the minerals themselves is determined, a tax is levied on the basis of such value. Unmined iron ore, except certain low recovery ore, is designated as Class 1a real property, presently assessed at 50 percent of its market value, and taxed at the prevailing mill rate. Minn.St. 273.13, subd. 2. Low recovery iron ores also fall within class 1a but are valued at from 30 percent to 48½ percent of market value. Minn.St. 273.15. Unmined taconites and iron sulphides are to be assessed and taxed on the basis of value with the one important difference that the tax may not exceed $10.00 per acre. Minn.St. 298.26. Finally, all other severed mineral interests, to the extent they can be valued, are susceptible to ad valorem taxation pursuant to Minn.St. 272.04 in the same manner as other interests in land. In effect the legislature has directed that severed mineral interests be taxed in relation to value or production where possible but that under no circumstances can such an interest be taxed at less than $2.00 per interest. We cannot say that the legislature has exceeded its discretion.

The cases upon which plaintiffs rely do not compel a contrary conclusion. In *State ex rel. Owen v. Donald*, 161 Wis. 188, 153 N.W. 238 (1915), the plurality opinion declared unconstitutional a statute which imposed a tax on severed mineral interests. The concurring opinion of Justice Timlin, however, indicates that the reason the statute was invalid was because its tax forfeiture provisions treated owners of severed mineral interests differently from owners of other property interests. Likewise, in *Northwestern Improv. Co. v. Morton County*, 78 N.D. 29, 47 N.W.2d 543 (1951), the statute taxing severed mineral interests was unconstitutional because it imposed a tax on severed mineral interests created by reservations in deeds but did not tax severed mineral interests created by a direct conveyance of the mineral interest. The court cited an earlier decision upon which plaintiffs heavily rely, *Northwestern Improv. Co. v. State*, 57 N.D. 1, 220 N.W. 436 (1928), only for the proposition that a classification cannot be based solely on the manner mineral rights are severed from the surface interest. The North Dakota Supreme Court did not give the decision the broad interpretation the plaintiffs urge this court to adopt.

■ 2. Plaintiffs also argue that the Minnesota Constitution requires that real property taxes be related to value. Plaintiffs have cited no authority, however, and we have discovered none, that directly supports their argument. To the contrary the language of the constitution and its interpretation by this court suggest that the controlling constitutional provision was specifically amended to eliminate the absolute requirement that taxes be related to value.

The Minnesota Constitution currently provides only that "[t]axes shall be uniform upon the same class of subjects * * *."

Minn.Const. art. 10, § 1. Prior to 1906, however, the Minnesota Constitution required "taxes to be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state." Minn.Const. art. 9, § 1 (1857), amended 1869, 1881, 1894, 1906. Interpreting the prior constitutional language, this court declared unconstitutional a probate fee arbitrarily based upon a cash valuation, *State v. Gorman*, 40 Minn. 232, 41 N.W. 948 (1889); and a tax of one cent per ton on iron ore mined within the state. *State v. Lakeside Land Co.*, 71 Minn. 283, 73 N.W. 970 (1898). In response to a number of unfavorable tax decisions the people of the state amended the constitution in 1906 to its present broad provision. Anderson, *The Need for Constitutional Revision in Minnesota*, 11 Minn.L.Rev. 189, 204. The purpose of the 1906 amendment was to free the legislature from most of the previous constitutional restraints.

> "The fair adjustment of tax burdens * * * demanded more comprehensive powers in the legislature; and the people, relying upon the responsibility of that body to its constituents, relaxed the restraints theretofore existing." *Reed v. Bjornson*, 191 Minn. 254, 259, 253 N.W. 102, 104 (1934).

The "wide-open tax amendment," as it was popularly called, eliminated the "absolute requirement of taxation of all property on the basis of a cash valuation." W. Anderson, A History of the Constitution of Minnesota 190 (1921).

The cases upon which plaintiffs rely do not directly support their position. In *Independent School Dist. No. 99 v. Commr. of Taxation*, 297 Minn. 378, 211 N.W.2d 886 (1973), this court reversed a decision of the Tax Court because the record did not indicate whether the assessing authorities considered every element affecting market value as required by the statutory scheme. The decision did not, however, contain any language indicating market value was a constitutional requirement. Similarly, plaintiffs' reference to Minn.St. 273.11 as

legislative recognition that property must be taxed according to value can be equally rationalized as a legislative recognition of equality. See *In re Petition of Dulton Realty, Inc. v. State*, 270 Minn. 1, 15, 132 N.W.2d 394, 405 (1964).

Nor are cases involving the validity of assessments for real estate taxes persuasive. See *In re Petition of Dulton Realty, Inc. v. State, supra; In re Petition of Hamm v. State*, 255 Minn. 64, 95 N.W.2d 649 (1959). Both cases simply require that taxes on any one piece of property be uniform in relation to the taxes levied on other property of the same class. It is true that this court said, in reference to the uniformity clause, that it does not "permit the adoption of an arbitrary yardstick of valuation for all properties which ignores their differences in actual market value." 255 Minn. 70, 95 N.W.2d 654. Here however, none of the parties contest the fact that severed mineral interests cannot readily be valued. Taken together with the district court's finding that every mineral interest has some value as a property interest regardless of its location, the uniform tax imposed on severed mineral interests represents a reasonable exercise of the legislature's authority to tax a class of real property that has escaped taxation. The uniformity clause does not require absolute equality:

> " * * * The distribution of the tax burden in such manner as seems equitable is recognized as a proper exercise of the power of taxation. The selection of subjects of taxation * * * is inherent in that power. The process of selection involves classification with resulting diversity in the subjects selected for taxation * * * as well as in the amount of the tax." *C. Thomas Stores Sales System, Inc. v. Spaeth*, 209 Minn. 504, 297 N.W. 9, 16 (1941).

As noted earlier the separate classification of severed mineral interests is reasonable. Therefore the fact that the amount of tax may vary in some instances depending on the number of owners does not make the tax constitutionally infirm.[5]

---

**5.** Plaintiffs made a further argument that a tax which exceeds the value of the property tax is unconstitutional. The test whether a tax stat-

ute violates the due process clause of the Fourteenth Amendment is whether the tax is within the lawful power of the legislature. The due

Plaintiffs also have referred to cases from other jurisdictions which support their position. See, e. g., *State of Texas v. Federal Land Bank of Houston*, 160 Tex. 282, 329 S.W.2d 847 (1959); *Chicago and Northwestern Transportation Co. v. Pederson*, Bayfield County Circuit Court, December 18, 1975, affirmed, 80 Wis.2d 566, 259 N.W.2d 316 (1977). Those decisions are not persuasive, however, since those jurisdictions contain constitutional provisions dissimilar from that in our constitution. For example, the Texas Constitution expressly requires that all property be taxed in proportion to its value. Tex.Const. art. 8, § 1. Similarly, the Wisconsin Supreme Court, interpreting that state's uniformity clause, has stated that all property taxed must bear its burden equally on an ad valorem basis. See *Gottlieb v. Milwaukee*, 33 Wis.2d 408, 424, 147 N.W.2d 633, 641 (1967).

3. The statutory scheme at issue requires the owners of severed mineral interest to file a verified statement containing, *inter alia*, the legal description of the property upon or beneath which the severed mineral interest exists, and information indicating where the instrument from which the severed mineral interest was created or acquired, may be found. Minn.St. 93.52, subd. 2. If the owner of a severed mineral interest fails to file the verified statement within the allotted time period, the mineral interest forfeits to the state. Minn.St. 93.55. Plaintiffs argue that the registration and forfeiture provisions violate the due process clauses of the state and Federal constitutions.

■ Where an economic regulation is involved, due process requires that legislative enactments not be arbitrary or capricious; or, stated differently, that they be a reasonable means to a permissive objective. *Lee v. Delmont*, 228 Minn. 101, 36 N.W.2d 530 (1949); *McElhone v. Geror*, 207 Minn. 580, 292 N.W. 414 (1940); *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Due process demands only that (1) the act serve to promote a public purpose, (2) it not be an unreasonable, arbitrary or capricious interference, and (3) the means chosen bear a rational relation to the public purpose sought to be served. *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229 N.W.2d 144, appeal dismissed, *sub nom.*, *Heaven Hill Distilleries, Inc. v. Novak*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

Plaintiffs do not seriously quarrel with the purpose of the act, which is to identify and clarify the obscure and divided ownership conditions of severed mineral interests in order to facilitate their development. Minn.St. 93.52, subd. 1. Plaintiffs do argue, however, that the registration requirement is unreasonable in that the record indicates that owners of severed mineral interests are not difficult to locate. But the record also contains evidence indicating that a large number of mineral interests were severed in the late nineteenth century and early twentieth century, that a large number of the severed mineral interests are fractionalized, and that the determination of ownership of the fractionalized mineral interests is time consuming and often hinders exploration and development of minerals. On this record we cannot say that registration requirement is unreasonable.

■ Plaintiffs also argue that the forfeiture provisions bear no reasonable or legitimate relationship to any end sought by

process clause is applicable only if the tax is so arbitrary as to compel the conclusion that the statute does not involve the exercise of the taxing power but a direct exercise of a different and forbidden power. *A. Magnano Co. v. Hamilton*, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (1934). Any attempt to determine the constitutionality of a tax by its amount furnishes "no juridical ground for striking down a taxing act." 292 U.S. 47, 54 S.Ct. 602, 78 L.Ed. 1116.

On this record we cannot say that the tax imposed on severed mineral interests is so arbitrary as to violate due process. The record clearly establishes that severed mineral interests were not paying any taxes, that some severed mineral interests were created to avoid ad valorem taxation, and that severed mineral interests have some value. The legislature's response, which assures that all severed mineral interests will pay at least some tax, is not unreasonable as an exercise of its power to tax.

the registration requirements. The basis for their argument is that under the prior statutory scheme, owners of severed mineral interests were given until January 1, 1975, to file the verified statements of ownership. The penalty imposed for the failure to file was to permit the Commissioner of Natural Resources to lease the mineral interest as agent for the owner. Minn.St. 1971, § 93.52, subd. 2; § 93.55. Prior to the filing deadline, however, the legislature enacted the forfeiture provisions as the penalty for failure to comply with the registration requirement. Thus plaintiffs argue that the legislature was in no position to know whether the forfeiture provisions were necessary or not. While the record indicates that some statements were not filed before the forfeiture provisions were in effect because the deadline had not expired, the record also indicates that, for whatever reason, the filings were not being made. Therefore the legislature could conclude that the penalty of forfeiture was necessary to ensure that the necessary filings would be made. The legislature also could have concluded that the former penalty provisions, i. e., allowing the state to lease the mineral interest, were inadequate in light of the tax imposed on severed mineral interests. Owners of severed mineral interests might well be reluctant to make the necessary filings and thereby subject their interest to taxation. Given the public purpose of the act, the means chosen by the legislature do not violate due process.

■ 4. The statutory scheme at issue required that notice of the registration requirement and the attendant forfeiture provisions be given by publication of the scheme in a legal newspaper within each county in the months of October, November and December, 1973, and in two publications related to mining activities which have a nationwide circulation. Minn.St. 93.58. The scheme also provided that if the owner of a severed mineral interest fails to make the required filings within the allotted time period, the mineral interest forfeits to the state. Minn.St. 93.55. Thereafter anyone claiming an ownership interest

in a severed mineral interest before forfeiture may commence an action to determine ownership and the fair market value both at the time of forfeiture and the time of bringing the action. The successful claimant recovers lesser of the two values. Id. Plaintiffs argue that the statutory scheme violates the due process clauses of the state [6] and Federal constitutions [7] because the notice provisions are inadequate and because an owner of a severed mineral interest who fails to comply with the registration requirement is denied an opportunity for a hearing before the forfeiture occurs. We agree.

■ At a minimum the due process clause requires that deprivation of property be preceded by notice and an opportunity for a hearing appropriate to the case. *Mullane v. Central Hanover, etc., Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The *Mullane* court discussed the sufficiency of notice as follows:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. (Citations omitted.) The notice must be of such nature as reasonably to convey the required information * * *. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied." 339 U.S. 314, 70 S.Ct. 657, 94 L.Ed. 873.

The question is whether the state's efforts of notification can be said to be reasonably calculated to apprise the owners of severed mineral interests of the pendency of the forfeiture. Cf. *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972).

The state argues that notice by publication is constitutionally adequate here because of the practicalities and peculiarities associated with identifying and locating

---

6. Minn.Const. art. 1, § 7.

7. U.S.Const. Amend. XIV.

owners of severed mineral interests. See Minn.St. 93.52, subd. 1. It is true that the St. Louis County Assessor testified that information concerning the identification and ownership of severed mineral interests is not contained in public records and, where contained in private abstract records, is prohibitively expensive to obtain. But the record also contains testimony indicating that owners of severed mineral interests could be identified and located. The statute as written, however, does not distinguish between those owners who could be identified with little or no diligence and those whose identity, even with due diligence, could not be ascertained. Under these circumstances, we think notice by publication of the statutes alone is inadequate.

The United States Supreme Court has recognized that publication alone is not a reliable means of acquainting interested parties of the fact that their interests are subject to forfeiture:

"* * * Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper * * *." *Mullane*, 339 U.S. 315, 70 S.Ct. 658, 94 L.Ed. 874.

We likewise have recognized the unreliability of notice by publication. *Meadowbrook Manor, Inc. v. City of St. Louis Park*, 258 Minn. 266, 104 N.W.2d 540 (1960). In the instant case the chance of notice is further reduced in that the notice required to be published does not name those whose attention it is supposed to attract. Furthermore the state is not required to do anything, e. g., attachment, entry upon real estate, which might reasonably be expected to call to the owner's attention that his mineral interest is subject to forfeiture. Under these circumstances, notice by publication is inadequate where forfeiture is the penalty imposed for mere failure to act. Cf. *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

We are also in agreement with plaintiffs' argument that the statutory scheme attending the forfeiture provisions violates due process because it contains no provision for a hearing to determine the validity of the forfeiture. Due process requires, except in emergency situations, a hearing that is meaningful and appropriate to the nature of the case before a party can be deprived of a property interest. *Mullane, supra.* The statute in question contains, in part, the following language:

"If the owner of a mineral interest fails to file the verified statement * * the mineral interest shall forfeit to the state. * * * After the mineral interest has forfeited to the state pursuant to this section, a person claiming an ownership interest before the forfeiture may recover the fair market value of the interest, only in the following manner. An action must be commenced within six years after the forfeiture under this section to determine the ownership. * *." Minn.St. 93.55.

The language of the statute clearly provides that, upon the failure to file the verified statement, the mineral interest forfeits to the state; the only judicial determination to be made is whether the party thereafter claiming an ownership interest was the owner at the time of forfeiture. The only remedy available to an owner whose interest has forfeited is the following:

"* * * Persons determined by the court to be owners of the interests at the time of forfeiture to the state under this section may present to the commissioner of finance a verified claim for refund of the fair market value of the interest. * * Thereupon the commissioner of finance shall refund to the claimant the fair market value at the time of forfeiture or at the time of bringing the action, whichever is lesser, less any taxes, penalties, costs, and interest which could have been collected during the period following the forfeiture under this section, had the interest in minerals been valued and assessed for tax purposes at the time of forfeiture under this section * * * Minn.St. 93.55.

We cannot imagine a more clear violation of due process than the failure to provide a hearing before forfeiture. *Mullane, supra.*

Defendants argue that the constitutionally-required hearing is merely postponed and that the remedy provided is adequate under the circumstances. Defendants rely on *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), wherein the court stated that, in limited circumstances, immediate seizure of a property interest, without an opportunity for a prior hearing, is constitutionally permissible. In determining whether an immediate seizure of a property interest may be constitutionally permissible, the court looks at the following: (1) whether the seizure is necessary to secure an important governmental or general public interest, (2) whether there exists a special need for very prompt action, and (3) whether the state has kept strict control over its monopoly of force.

We do not think the *Fuentes* exception is applicable. First, in those cases cited by the Supreme Court as employing the exception, a party whose property interest was subjected to immediate seizure had an opportunity to contest the seizure itself. See, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *Phillips v. Commissioner of Internal Revenue*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931). No such opportunity is available here.

Second, assuming arguendo that the *Fuentes* exception is applicable, defendants have not indicated why the prompt forfeiture provisions are necessary. See, e. g., *North American, etc., Storage v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (postponement of notice and hearing constitutionally permissible to protect public from contaminated food). While forfeiture may be a necessary incentive to ensure filing, there does not appear to be any special need to dispense with the constitutionally required hearing before the forfeiture. Defendant's argument based on *Fuentes* is not persuasive.

Defendants also argue that the registration and forfeiture provisions contained in the mineral registration are sufficiently analogous in effect to the marketable title act, Minn.St. 541.023, which was upheld in

*Wichelman v. Messner*, 250 Minn. 88, 83 N.W.2d 800 (1957), as to allow the constitutionality of the former to be sustained on the strength of the latter. Briefly stated, the court's holding in *Wichelman* sustained the constitutionality of the marketable title act, which required those owning interests in "old conditions and restrictions," e. g., right of re-entry, possibility of reverter, to record notice of the continued existence of such rights or permit their extinguishment by the barring of future actions affecting possession based on any such conditions or restrictions.

Specifically defendants argue that the enactment of the legislation, the publication of the act's provisions in a legal newspaper in each county throughout the state, and the time period allowed within which to make the required filing, are sufficient to comport with due process. Defendants point out that a period of 9 months within which to file the required notice was approved vis-a-vis the marketable title act; the mineral registration act allowed at least 19 months. In *Wichelman*, however, the court discussed the amount of time given to make the required filings, not with respect to the sufficiency of notice, but with respect to the constitutional prohibition against retrospective legislation. The court specifically stated that lack of notice was not a valid consideration. 250 Minn. 110, 83 N.W.2d 818. In any event we do not find defendants' analogy between the mineral registration act and the marketable title act to be persuasive.

The marketable title act was intended, as its name indicates, to "relieve a title from the servitude of provisions contained in ancient records which 'fetter the marketability of real estate.'" *Wichelman, supra*, 250 Minn. 100, 83 N.W.2d 812. The legislature may have concluded that the servitudes arising from ancient records had outlived the reasons for their creation, that they may have been created for the benefit of persons who are disinterested in the observance of the conditions and restrictions, and that the interests impede the full economic use of property. Further, the marketable title act provided that the person against

whom the act is invoked is conclusively presumed to have abandoned his interest in the property. Minn.St. 541.023, subd. 5. Thus the marketable title act was not intended to extinguish valid but inconvenient claims. The mineral registration act, on the other hand, extinguishes valid as well as invalid claims upon the mere failure to file. It is unlikely that the holders of mineral rights have any intention of abandoning their rights; thus, any conclusive presumption of abandonment would be devious and would amount to intellectual dishonesty. Under these circumstances publication is not adequate.

Again analogizing to the marketable title act and its interpretation in *Wichelman, supra*, defendants argue that the mineral registration act can be sustained as a statute of limitations in that the failure to file under either scheme divests an owner of a property interest. We disagree.

The purpose of a statute of limitations is to "prescribe a period within which a right may be enforced, afterwards withholding a remedy for reasons of private justice and public policy." *Bachertz v. Hayes-Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937). Statutes of limitations generally affect the remedy and not the right. *Baker v. Kelley*, 11 Minn. 480 (1866). The United States Supreme Court has recognized that the distinction between substantive rights and remedial or procedural rights vis-a-vis statutes of limitation may not be clear cut. Nevertheless the court has adopted as a matter of constitutional law the hypothesis that statutes of limitation go to matters of remedy, not to destruction of rights. *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). The mineral registration act, however, directly affects a property interest without any pretense of affecting a remedy only. The effect of defendants' argument is to destroy the distinction between substantive rights and procedural rights. While we recognize that the distinction may in some cases be difficult to discern, this case is not one of them.

Finally, defendants argue that the constitutionality of the mineral registration act can be sustained on the authority of the marketable title act in that both have the sanctions of a recording act.[8] In support of their position defendants make the following points. First, the penalty for failure to comply with the marketable title act, as with the mineral registration act, is the possibility of complete divestiture of ownership of a property interest. Second, under both the marketable title act and the mineral registration act, forfeiture may be prevented by filing the required information. Finally, as noted in *Wichelman, supra*, the marketable title act and the mineral registration act both have as their justification improving the marketability of real estate. Therefore defendants conclude the mineral registration act is a valid exercise of the police power.

While the analogy to the sanctions of a recording act may have been proper in the context of the marketable title act which was directed principally at interests in property which have outlived the reasons for their creation, that analogy is not proper here. It is true that both the marketable title act and the mineral registration act attempt to remedy defects in the recording system through the imposition of similar penalty provisions. To that extent defendant's analogy is appropriate but only to that extent. As noted previously, the mineral registration act is not directed at interests created in ancient records which have outlived their usefulness but at all severed mineral interests whenever created. Further the marketable title act was limited to stale claims which could be presumed to be abandoned and of no value. The mineral registration act however, is not so limited. As the district court found, every mineral interest has some value as a property interest; some of plaintiffs' interest has some value as a property interest; some of plaintiffs' interests appear to be enormously valuable. Finally, the mineral registration act and traditional recording acts are easily dis-

---

**8.** There is no question that recording acts are constitutional as a valid exercise of the police power. *Jackson v. Lamphire*, 28 U.S. (3 Pet.) 280, 7 L.Ed. 679 (1830). See *American Land Co. v. Zeiss*, 219 U.S. 47, 31 S.Ct. 200, 55 L.Ed. 82 (1911).

tinguished by their operation and effect. The failure to file under a recording act does not automatically result in divestiture. Recording acts typically divest the rights of a grantee in an unrecorded conveyance only if his grantor conveys the same interest to a subsequent purchaser who purchases in good faith and for value. See Minn.St. 507.34. Since the consequences of failing to file are so different, what satisfies due process in terms of a recording act is not sufficient for the mineral registration act.

5. Plaintiffs argue that certain language used in Minn.St. 93.52, subd. 2, is so vague and ambiguous as to violate due process. The statute, with emphasis on the challenged language, reads in part as follows:

" * * * [E]very owner of a fee simple interest in *minerals*, hereafter referred to as a mineral interest, in lands in this state, which interest is owned separately from the fee title to the surface of the property upon or beneath which the mineral interest exists, shall file for record * * * in the county where the mineral interest is located a verified statement citing section 93.52 to 93.58 and setting forth his address, his *interest in the minerals* and both (1) the legal description of the property upon or beneath which the interest exists, and (2) the book and page number or the document number * * * of the instrument by which the mineral interest is *created or acquired * * *.*" (Emphasis added.) Minn.St. 93.52, subd. 2.

In considering plaintiffs' claim we begin with the presumption of constitutionality. A statute will not be declared void for vagueness unless it is so uncertain and indefinite that after exhausting all rules of construction it is impossible to ascertain legislative intent. *Wichelman, supra.* We further explicated the general rule in *Wichelman* with the following:

" * * * A statute will not be declared void for vagueness and uncertainty where the meaning thereof may be implied, or where it employs words in common use, or words commonly understood, or words previously judicially defined, or having a settled meaning in law, or a

technical or other special meaning well enough known * * *, or an unmistakable significance in the connection in which they are employed. In short, legislation otherwise valid will not be judicially declared null and void on the ground that the same is unintelligible and meaningless unless it is so imperfect and so deficient in its details as to render it impossible of execution and enforcement, and is susceptible of no reasonable construction that will support and give it effect, and the court finds itself unable to define the purpose and intent of the legislature." 250 Minn. 111, 83 N.W.2d 819.

Applying the legislative policy expressly stated in the mineral registration act, which is to identify and clarify the obscure ownership conditions of severed mineral interests in this state, we conclude that the alleged ambiguities raised by plaintiffs, being subject to reasonable constructions consistent with the legislature's intent, are not unconstitutionally vague. A short discussion of certain ambiguities raised by plaintiffs illustrates our conclusion.

For example, plaintiffs, relying on *Vang v. Mount*, 300 Minn. 393, 220 N.W.2d 498 (1974), argue that the word "mineral" is ambiguous because what is included in a general mineral reservation depends on the intent of the parties and the circumstances surrounding the reservation. It is clear from the language of the statute and from the express legislative intent that the legislature intended owners of all severed mineral interests to register, regardless of what the parties intended to convey. For that reason plaintiffs' reliance on *Vang v. Mount* is misplaced.

Plaintiffs also contend that the phrase "owned separately from the surface" is ambiguous in that a mineral interest once severed but now owned by the same person who owns the surface might be considered still severed for purposes of Minn.St. 93.52, subd. 2. We do not agree. The plain purpose of the mineral registration act is to locate, identify, and tax mineral interests owned by someone other than the owner of

the surface interest. Minn.St. 93.52, subd. 1; 272.039. Where the surface and mineral interests are jointly owned, it is obvious that the mineral registration requirements do not apply.

 A final example is plaintiffs' argument that the meaning of the requirement that the owner must refer to the "instrument by which the mineral interest is *created or acquired*" is ambiguous, one interpretation being that two such instruments might exist—one which created the instrument and one by which the present owner acquired the interest. The purpose of the statute being to identify current owners, the statute requires the statement in such a case to refer to the instrument by which the mineral interest was acquired. The legislature obviously included the disjunctive "or" in recognition of the fact that there may be cases where no deed or other instrument named the current claimant as owner. In those cases reference to the instrument creating the mineral interest is appropriate. We need not burden this opinion with examples of other ambiguities raised by plaintiffs. It is sufficient to say that the mineral registration act is not unconstitutionally vague.

Affirmed.

SHERAN, C. J., and OTIS and ROGOSHESKE, JJ., took no part in the consideration or decision of this case.